J-S60010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DIAZ | : | |
| | : | |
| Appellant | : | No. 835 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 8, 2019
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s):  CP-66-CR-0000098-2018

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:            **FILED: MARCH 5, 2020**

Appellant, David Diaz, appeals from the judgment of sentence entered following his conviction of various crimes pertaining to a confrontation he had with a former paramour.  We affirm.

The trial court set forth the history of this case as follows:

The charges stem from an altercation between [Appellant] and Debra Nunez (hereinafter "Ms. Nunez") and Steven Noel (hereinafter "Mr. Noel") that occurred on October 9, 2017 in a parking lot located at 420 West Tioga Plaza, Tunkhannock Township, Wyoming County, Pennsylvania.  [Appellant] and Ms. Nunez have two (2) children together.  (H.T. 11/13/18, pp. 38, 89, 95).  According to the Reporting Officer Narrative [Appellant] and Ms. Nunez recently broke up and [Appellant] was infuriated that Ms. Nunez was dating Mr. Noel.  As Ms. Nunez was dropping off Mr. Noel at work with her two (2) year old grandson, [Appellant's] car approached Ms. Nunez with [Appellant] beeping the horn erratically.   (H.T.  11/13/18,  pp.  42-[4]7,  93). [Appellant] followed Ms. Nunez's vehicle into the parking lot of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Tractor Supply and Ms. Nunez exited her vehicle. (H.T. 11/13/18, pp. 49, 90). [Appellant] was travelling with Ms. Nunez's sister, Patricia Hernandez, and the parties' two (2) minor children. (H.T. 11/13/18, pp. 49-50). As Ms. Nunez exited her vehicle, [Appellant] got out of his car and was calling her names, lifted his shirt and pulled out a gun. (H.T. 11/13/18, pp. 51-[5]2, 97, 129-131). Ms. Nunez was aware that [Appellant] carried a loaded gun every day. (H.T. 11/13/18, pp. 53-[5]4).

Ms. Nunez testified that when [Appellant] pulled out his gun, her children were screaming and that she went to the rear of her vehicle so that if [Appellant] did shoot his gun, it would not hit her car or her grandson. (H.T. 11/13/18, pp. 54-[5]5). [Appellant] held the gun to Ms. Nunez's face and she feared he was going to kill her. (H.T. 11/13/18, pp. 56-[5]9). [Appellant] told Ms. Nunez he wanted her to die. (H.T. 11[/]13/18, p. 59). After [Appellant] pulled his gun towards Ms. Nunez, Mr. Noel exited the vehicle and [Appellant] pointed the gun at him. (H.T. 11/13/18, pp. 59-61). Mr. Noel testified that he feared for his life. (H.T. 11/13/18, p. 98). Sometime shortly thereafter, [Appellant] got in his vehicle and left. (H.T. 11/13/18, pp. 61-[6]2).

Trial Court Opinion, 7/10/19, at 2-3.

A criminal complaint was filed on October 10, 2017, and a criminal information was filed on April 5, 2018. On November 14, 2018, at the conclusion of a jury trial, Appellant was convicted of one count each of terroristic threats, recklessly endangering another person ("REAP"), simple assault, and two counts each of disorderly conduct (engaging in fighting to threatening behavior), disorderly conduct (creating a hazardous or physically offensive condition), and harassment.[1] On January 14, 2019, the trial court entered an order permitting trial counsel to withdraw and appointed current

---

[1] 18 Pa.C.S. §§ 2706(a)(1), 2705, 2701(a)(3), 5503(a)(1), 5503(a)(4), and 2709(a)(4), respectively.

- 2 -

counsel to represent Appellant. On May 8, 2019, the trial court sentenced Appellant to serve an aggregate term of incarceration of one to twenty-three and one-half months. Appellant filed timely post-sentence motions on May 9, 2019, which the trial court denied on May 10, 2019. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. DID THE TRIAL COURT ERR IN DENYING DEFENSE COUNSEL'S REQUEST TO QUESTION OFFICER SIDOREK REGARDING STATEMENTS MADE BY THE ALLEGED VICTIM'S DAUGHTER REGARDING THE VICTIM'S VIOLENT CHARACTER?

2. DID THE TRIAL COURT ERR IN FAILING TO DISMISS COUNT 3 OF THE CRIMINAL INFORMATION, RECKLESSLY ENDANGERING ANOTHER, 18 PA. C.S. §2705 WHERE THE COMMONWEALTH FAILED TO PRESENT EVIDENCE THAT THE FIREARM ALLEGEDLY UTILIZED BY [APPELLANT] IN THE PERPETRATION OF SAID CRIME WAS EITHER FUNCTIONING OR LOADED WITH AMMUNITION?

3. DID THE TRIAL COURT ERR IN FAILING TO DISMISS THE CHARGE OF TERRORISTIC THREATS AS AGAINST DEBRA NUNEZ, 18 Pa. C.S. §2706, WHERE THE EVIDENCE PRESENTED FAILED TO DEMONSTRATE THAT APPELLANT POSSESSED A SETTLED PURPOSE TO TERRORIZE THE ALLEGED VICTIM?

4. WAS THE TESTIMONY OF THE COMMONWEALTH'S WITNESSES SO INHERITELY INCONSISTENT SUCH THAT THE JURY'S VERDICT AS TO EACH COUNT FOR WHICH APPELLANT WAS CONVICTED COULD ONLY HAVE BEEN ARRIVED AT THROUGH SPECULATION AND CONJECTURE?

Appellant's Brief at 5.

Appellant first argues that the trial court erred in failing to permit defense counsel to question a police officer regarding Ms. Nunez's daughter's statements, which the officer had included in a police report. Appellant's Brief

at 14-16. Appellant alleges that language in the police report evinces that Ms. Nunez, the victim, is violent. Appellant contends that the "character trait of violence was relevant where the crux of the Commonwealth's prosecution was that Appellant was violent and threatening to the victim." *Id*. at 15. We disagree.

The decision to admit or exclude evidence is committed to the trial court's sound discretion, and its evidentiary rulings will be reversed only upon a showing that it abused that discretion. *Commonwealth v. Laird*, 988 A.2d 618, 636 (Pa. 2010). Such a finding may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009)).

Pa.R.E. 402 provides that generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Furthermore, Pa.R.E. 401 provides the following test for relevancy:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Pa.R.E. 401.

The basic requisite for the admissibility of any evidence is that it be competent and relevant. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa.

- 4 -

Super. 2003). Thus, in determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial effect of that evidence. ***Commonwealth v. Barnes***, 871 A.2d 812, 818 (Pa. Super. 2005). Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. ***Id***. Although relevance has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. ***Freidl***, 834 A.2d at 641.

"Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

Under the Pennsylvania Rules of Evidence, character evidence is governed by Rule 404, which provides:

**Rule 404. Character Evidence; Crimes or Other Acts**

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

- 5 -

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

(B) subject to limitations imposed by statute a defendant may offer evidence of an **alleged victim's pertinent trait**, and if the evidence is admitted the prosecutor may:

(i) offer evidence to rebut it; and

(ii) offer evidence of the defendant's same trait; and

(C) in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

Pa.R.E. 404 (emphasis added).

"[S]pecific instances of a victim's prior conduct are admissible to show a victim's character trait only if the trait in question is probative of an element of a crime or a defense." ***Commonwealth v. Minich***, 4 A.3d 1063, 1071 (Pa. Super. 2010). In ***Minich***, we explained that "evidence relating to specific instances of a victim's prior conduct must be probative of the victim's conduct during the alleged criminal episode upon which the current charges are based." ***Id***. at 1072. Under Rule 404(2)(B), evidence of "the alleged victim's pertinent trait" is "limited to a character trait of the victim that is relevant to the crime or defense at issue in the case." ***Id***. "[C]riminal defendants asserting self-defense may introduce evidence of a victim's prior conduct

tending to establish the victim's violent propensities." **Id.**; **see also Commonwealth v. Miller**, 634 A.2d 614, 622 (Pa. Super. 1993) (where self-defense was properly at issue in the case, then expert testimony regarding "battered woman syndrome" was relevant to prove the defendant's state of mind as it relates to an element of a theory of self-defense).

In **Commonwealth v. Sasse**, 921 A.2d 1229 (Pa. Super. 2007), the trial court excluded evidence of a victim/witness's use of drugs and alcohol, sexual promiscuity, mental illness, and her father's criminal status, which the defendant had argued was relevant to his state of mind on the night of the incident. **Sasse**, 921 A.2d at 1238. We affirmed, stating that these traits of character were not pertinent to the incident in question, and "their only purpose would be to attempt to paint [the victim/witness] in a negative light at trial and, therefore, to discredit her testimony improperly." **Id**.

The following is the language in question from the police report:

> It should be noted that while speaking with [O.] she stated when she stays at her mother's residence she in constant fear for her and her brother's safety because her mother gets highly intoxicated and verbally harasses her. [O.] also stated once her mother got so drunk she hit her Aunt ([Ms.] Hernandez) repeatedly giving her two (2) black eyes then laughed about it. Chief Carpenter stated he has witnessed the severe intoxication of Nunez. Chief Carpenter contacted Wyoming County Children and Youth who initiated an investigation on behalf of the children.

Trial Court Opinion, 7/10/19, at 4.[2]

After reviewing the police report and hearing oral argument from the parties, the trial court stated:

> The court, on break, reviewed a motion from defense counsel … to include in the police report the final paragraph regarding prior acts not related to the case at bar. The court's reviewed the same and the motion to enter the last paragraph of Officer Sidorek's police report is denied due to the fact that it is not relevant to the incident at bar.

N.T., 11/13-14/18, at 173.

Because Appellant did not raise self-defense in this case, it was within the court's discretion to exclude evidence of Ms. Nunez's bad character traits because such evidence was not pertinent to any crime or defense being raised. *Minich*, 4 A.3d 1072. Moreover, Appellant has not explained how the evidence was related to the criminal episode at issue or was probative of an element of a crime or a defense. We see no difference between *Sasse* and the instant matter. Hence, we discern no abuse of the trial court's discretion in precluding evidence. Therefore, this issue lacks merit.

---

[2] We note that Appellant also claims that the language in the report establishes a motive for the victim to lie about the incident because the report suggests that the chief of police had witnessed the victim's intoxication and initiated an investigation by Wyoming County Children and Youth Services. *Id*. at 15-16. However, during the trial, Appellant's counsel conceded that the language in the report should be redacted, stating, "I would understand the court's reluctance to put Chief Carpenter's statement that was listed in there. I think that is hearsay, and I would agree that it should be redacted if it goes to the jury." N.T., 11/13-14/18, at 168. Accordingly, we decline to consider this portion of Appellant's argument.

Appellant's second and third issues present challenges to the sufficiency of the evidence to support his convictions of REAP and terroristic threats. Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

In his second issue, Appellant argues that the Commonwealth failed to establish that he committed the crime of REAP. Appellant's Brief at 16-18. Specifically, Appellant "contends that the Commonwealth's evidence fails to establish that Appellant possessed the actual present ability to place Ms. Nunez in danger of death or serious bodily injury." *Id*. at 16. Appellant asserts that there was no evidence to suggest that the firearm was either operable or loaded. *Id*. Appellant claims there was no testimony to establish that the loaded firearm discovered in Appellant's vehicle was the same firearm

used in the incident. *Id*. at 16-17. Appellant concludes that "[a]bsent evidence that the firearm in question was both loaded and operational, the Commonwealth failed to establish that Appellant created a danger of death or serious bodily harm." *Id*. at 17-18.

The crime of REAP is defined in the Crimes Code as follows:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705.

Section 2705 is satisfied where a defendant's conduct "places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Further, we have held that "[t]he crime of REAP is a crime of assault which requires the creation of danger. As such, there must be an actual present ability to inflict harm. . . . [T]he mere apparent ability to inflict harm is not sufficient. Danger, and not merely the apprehension of danger, must be created." *Commonwealth v. Reynolds*, 835 A.2d 720, 727-728 (Pa. Super. 2003) (internal quotations and citations omitted). Under the plain terms of the statute, a REAP conviction is supportable even where the victim suffered no actual injury whatsoever. *See Commonwealth v. Hartzell*, 988 A.2d 141, 143-144 (Pa. Super. 2009) (explaining that the evidence was sufficient to support the appellant's two REAP convictions because: "The testimony established that from a distance of approximately 30 yards, appellant fired into the creek near the bridge, approximately 25 to 30 feet

- 10 -

away from the [victims'] location on the bridge.  Although appellant may not have pointed the weapon directly at the two [victims], it was pointed in their general direction.  Moreover, the evidence established that the water was rather shallow and there were rocks in the stream. . . .  Thus, it is hardly inconceivable that a bullet fired into the stream nearby could have struck a rock or other object and deflected up and hit one of the two men"); **Reynolds**, 835 A.2d at 729 (pointing a loaded gun at an individual created the danger of death or serious bodily injury and the evidence was thus sufficient to support the defendant's REAP conviction).

Our review of the record reflects that Ms. Nunez testified regarding the incident.  She explained that when Appellant came toward her, he lifted his shirt and then he pulled out his gun.  N.T., 11/13-14/18, at 51.  She clarified that she and Appellant had lived together, and she knew that he carried a loaded handgun every day.  *Id*. at 52-53.  Ms. Nunez further testified:

Q. Did he ever talk about whether or not the gun was loaded?

A. Yes.

Q. Can you tell us what he may have said?

A. The gun was always load-loaded because I had asked him that if he napped or something like that, if he could at least put it into, you know, a safe.  I thought it was unsafe for a gun to be loaded while he slept with it.

Q. And would he accommodate your request?

A. No.

*Id*. at 53.  In addition, Ms. Nunez stated that during the incident Appellant pointed the gun at her face.  *Id*. at 58.

The Commonwealth also presented the testimony of Officer Corey Sidorek of the Tunhannock Township Police Department.  Officer Sidorek stated that he was dispatched to the scene of the incident and that Appellant was not present when he arrived.  N.T., 11/13-14/18, at 139-140.  After receiving another 911 call indicating that Appellant was at a particular address, Officer Sidorek went to the residence and met with Appellant.  *Id*. at 141-142.  The officer then provided the following testimony:

Q. When you spoke to him at that time, tell me about the conversation.

A. I asked [Appellant] if he had been in to the Tractor Supply parking lot that day.  He stated no.  He went straight to the school, dropped the kids off.  I asked him if he had a firearm.  He said yes, it was a Sig Sauer, which he didn't-

Q. I'm sorry.  I didn't hear the last part.  He said what?

A. He said yes, I have a Sig-I have a conceal carry, which was a Sig Sauer 9 millimeter handgun.

Q. What's Sig Sauer?

A. Sig Sauer is a make of a handgun.

Q. OK, so he told you he had this?

A. Yes, it was located in the trunk of his Volkswagen GTI vehicle.

Q. At that time?

A. At that time.

Q Did he show it to you?

A. We located it in the trunk of the vehicle. We used the serial number, ran a records check, it was registered to [Appellant]. He did have a proper conceal carry permit.

Q. OK, so let's back up for a second. How did you get to finding the gun in the trunk?

A. [Appellant] told me that's where it was located.

Q. And did you ask if you could see it?

A. Yes.

Q. And did he take you to it?

A. Yes.

Q. And did he open the trunk?

A. Yes.

Q. And he voluntarily showed it to you?

A. Yes.

Q. Did he take it out?

A. We took it out.

Q. Why?

A. Officer safety.

Q. What else did you do for officer safety?

A. We unloaded the handgun.

Q. You what?

A. Unloaded the handgun.

Q. It was loaded?

A. Yes.

*Id*. at 142-144.

Under the totality of the circumstances, the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, establishes that Appellant pointed a loaded handgun at Ms. Nunez face. This evidence is sufficient to sustain Appellant's conviction of REAP. Accordingly, Appellant's claim lacks merit.

Appellant next argues that the Commonwealth failed to present sufficient evidence to sustain his conviction of terroristic threats. Appellant's Brief at 18-19. Appellant contends that the facts of the case indicate that he was making a "spur of the moment threat" arising out of anger, which was insufficient to sustain the conviction. *Id*. We disagree.

The crime of terroristic threats is set forth at 18 Pa.C.S. § 2706(a) and provides, in relevant part, as follows:

> **(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> > (1) commit any crime of violence with intent to terrorize another; . . . .

18 Pa.C.S. § 2706(a)(1).

As this Court has previously explained, for a defendant to be convicted of terroristic threats:

> "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. Tizer***, … 684 A.2d 597, 600 ([Pa. Super.] 1996). "Neither the

> ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." **In re J.H.**, 797 A.2d 260, 262 (Pa. Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." **Tizer**, 684 A.2d at 600.

**Commonwealth v. Beasley**, 138 A.3d 39, 46 (Pa. Super. 2016) (quoting **Reynolds**, 835 A.2d at 730). Moreover, we have long held that a defendant's intent to terrorize can be inferred from his actions and from the message he communicated. **Commonwealth v. Kelley**, 664 A.2d 123, 128 (Pa. Super. 1995). Therefore, a direct communication of a threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats. **Id**. at 127. Also, the Commonwealth is not required to produce evidence that the person to whom the defendant communicated the threat was actually frightened. **Id**.

Our review of the record reflects Ms. Nunez testified that, when she pulled her car into a parking lot, Appellant followed in his vehicle and parked next to her. N.T., 11/13-14/18, at 47-49. Ms. Nunez further explained that, after she exited her vehicle, Appellant exited his vehicle, charged toward her, pulled his gun, and pointed it at her face. **Id**. at 49-58. Ms. Nunez stated that she thought Appellant was about to kill her. **Id**. at 47, 54, 58. She explained that Appellant had threatened her numerous times stating, "He's told me he-he wanted me to die. He would kill me. He wanted to kill me." **Id**. at 58-59. Ms. Nunez also testified to various instances in the past in which Appellant had threatened to kill her. **Id**. at 59.

- 15 -

Based on the foregoing, we are satisfied that the jury properly determined that the Commonwealth established all the elements of the crime of terroristic threats beyond a reasonable doubt. This testimony, which was found credible by the jury, with the inferences therefrom, was sufficient to prove beyond a reasonable doubt that Appellant intended to terrorize the victim with his prior threats to kill her coupled with his action of charging the victim and pointing a loaded gun at her. Therefore, the evidence was sufficient to sustain Appellant's conviction of terroristic threats. Hence, Appellant's contrary claim lacks merit.

Appellant last argues that the guilty verdicts were against the weight of the evidence. Appellant's Brief at 19-20. Appellant contends that, although the two victims testified that Appellant pointed a gun at them, another witness denied seeing Appellant with a gun, and a fourth eyewitness did not see Appellant point a gun. *Id*. at 19. Appellant also claims that the evidence regarding the actual firearm was specious because one victim described the gun as a 9mm Berretta, and the police recovered a Sig Sauer handgun from Appellant's possession. *Id*. Essentially, Appellant claims that the verdicts of guilty rendered by the jury are so contrary to the weight of the evidence that they shock one's sense of justice such that his convictions should be reversed and a new trial ordered.

In ***Commonwealth v. Clay***, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); ***Commonwealth v. Brown***, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ***Widmer***, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* ***Brown***, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> *Widmer*, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

> *Widmer*, 560 A.2d at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

*Clay*, 64 A.3d at 1054-1055 (emphasis in original). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court addressed the challenge to the weight of the evidence as follows:

> As repeatedly stated above, the Commonwealth and defense both presented evidence over the course of two days, which the jury dutiful[ly] listened [to]. More specifically, the Commonwealth's evidence showed that [Appellant] pointed a gun at the victims in the presence of three (3) minor children.

Following closing arguments, the jury was instructed and the jury … rendered its verdict.

Trial Court Opinion, 7/10/19, at 7.

Based upon our complete review of the record, we are compelled to agree with the trial court's conclusion that the jury's verdict was in keeping with the evidence presented. Here, the jury, sitting as the finders of fact, was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence and concluded Appellant perpetrated the nine crimes stated above. We agree that these determinations are not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/05/2020

- 19 -