634 A.2d 614

**COMMONWEALTH of Pennsylvania**

v.

**Ardella MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Nov. 18, 1993.

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed after Appellant was convicted of murder of the third degree [1] at a nonjury trial. Post-trial motions were denied, and Appellant was sentenced to five to twelve years imprisonment. A petition for reconsideration of sentence was denied by the court below and this direct appeal followed. We vacate Appellant's third degree murder conviction and remand for an evidentiary hearing.

The facts, when viewed in the light most favorable to the Commonwealth as the verdict winner, are as follows: Appellant and the victim, Mark Smith (Smith), had lived together on and off for several years, a relationship that resulted in the birth of their son, Mark, Jr. In the early morning hours of July 29, 1990, Appellant and Smith had an argument during which Smith burned Appellant with a cigarette, poked her in the chest and slapped her. Moments later, Appellant's uncle, Nate Durah, telephoned. Appellant informed Mr. Durah of the argument, but told him that everything was okay. Nevertheless, Mr. Durah, accompanied by his wife, Barbara, arrived at Appellant's home approximately forty-five minutes later. He testified that he escorted Smith from the house, and the two men argued as they walked up the street. Upon returning to the house, Mr. Durah lost sight of Smith momentarily and then heard his wife scream. He further testified that Smith at some point took off his clothes in the street and looked like he was reaching for something in his pants. Mrs. Durah testified that after the two men had walked back down the street, Smith took his pants off as Mr. Durah briefly

---

1. 18 Pa.C.S. § 2502(c).

walked to his car to return a baseball bat that he had been carrying. Mrs. Durah further testified that at this point Smith came up behind Appellant, "snatched her arm" and then stated, "Is this what you want?" or words to that effect. N.T. 4/2/91, at p. 55. Shortly thereafter Appellant plunged a kitchen knife into Smith's heart, causing his death. The depth of the wound was nine centimeters. Neither Mr. or Mrs. Durah testified that they saw Smith in possession of the knife at any time.

In a taped statement introduced by the Commonwealth in its case-in-chief, Appellant's version of the events was consistent with the testimony of the Durahs. Appellant, however, stated that Smith walked over to her and said, "Did I want to join my brother[?]" N.T. 4/3/91, at p. 111. Appellant's statement then indicates that, at the time Smith was removing his pants, a knife fell out and both parties reached for it. Appellant picked it up, told Smith that she "was tired of his shit," and stabbed Smith in the heart. *Id.* at 112.

Appellant claimed she acted in self-defense and now points to the following evidence: 1) Statements by Mr. Durah that Smith physically assaulted her, as well as other female relatives, on prior instances, and that he had removed Smith from the house on several occasions due to the couple's troubled relationship; 2) the testimony of Smith's probation officer that, on occasion, Appellant called him to tell him Smith was abusing her, particularly when Smith was intoxicated; 3) the probation officer's testimony about a specific incident where he visited the house and was told Smith hit Deborah Brooks, Appellant's sister, with a baseball bat and had pointed a gun at Appellant, and an incident where Smith threatened to throw an electrical appliance in a bathtub in which Appellant was sitting; 4) the probation officer's testimony that Smith was referred to outpatient treatment for alcohol abuse and violence in the home, although, to the probation officer's knowledge, Smith had never attended these programs; 5) the testimony of Deborah Brooks which corroborated the probation officer's testimony as to these other incidents between Appellant and Smith, as well as her testimony as to an additional incident

where Smith allegedly threatened to burn the house down; 6) testimony that Appellant had once sought a protection from abuse order; and 7) the testimony of the victim's mother, who lived next door to Appellant, in which she acknowledged that her son and Appellant fought often. Mrs. Smith also testified regarding the occasion where victim threatened to electrocute Appellant while she was in the bathtub.

Appellant raises the following issues on appeal:

I. Do the federal and state constitutions compel a new trial because trial counsel overrode the defendant's expressed desire and refused to allow the defendant to testify[?]

II. Does the Commonwealth disprove self defense by speculating that the victim was unarmed, and by arguing that his previous violence had not caused serious bodily injury and that the defendant had remained in the abusive relationship?

III. Does the Commonwealth disprove self defense and prove malice, if the only evidence of malice is the possible inference from use of a deadly weapon and the Commonwealth itself offers evidence of self defense which negates malice?

IV. Was trial counsel ineffective for failing to corroborate the self defense claim with the following available evidence:

1. The deceased's prior criminal record;

2. Ms. Miller's hospital record;

3. Police reports from Smith's arrests for acts of violence against Ms. Miller;

4. Ms. Miller's testimony;

5. Expert testimony regarding the battered woman syndrome;

And was counsel ineffective for failing to object to the admission of unauthenticated altered and prejudicial evi-

dence, and for failing to object to the Commonwealth's improper impeachment of a Commonwealth witness?

Appellant's Brief on Reargument at p. 3.

We note that Appellant's first issue was not raised in post-trial motions, but rather, was first raised in her 1925(b) statement of matters complained of on appeal. The trial court acted correctly in not considering this claim because, once an appeal had been filed, it was divested of jurisdiction to act further in the case. *See generally, Commonwealth v. Picker,* 293 Pa.Super. 381, 439 A.2d 162 (1981). Thus, the issue is waived. *See* Pa.R.Crim.P. 1123 (only those issues included in written post-verdict motions are considered preserved for appellate review); *see also, Commercial Credit Corp. v. Cacciatiore,* 343 Pa.Super. 430, 435, 495 A.2d 540, 543 (1985) ("failure to preserve issues in post-trial documents cannot be rectified by proffering them in response to a rule 1925(b) order of court"). We do note, however, Appellant has claimed in her fourth issue that trial counsel was ineffective for failing to present her testimony. Thus, as shall be discussed *infra,* because we are remanding for an evidentiary hearing on these claims of ineffectiveness, the issue of whether Appellant was prevented from testifying on her own behalf may be determined at the evidentiary hearing.

We now turn to the second and third issues enumerated above, both of which deal with the sufficiency of the evidence with respect to Appellant's conviction. The test for reviewing a sufficiency claim is well-settled:

Where a defendant challenges his conviction on appeal the test of sufficiency of evidence is whether, viewing all evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Torres,* 396 Pa.Super. 499, 501, 578 A.2d 1323, 1324 (1990) (citations omitted). "A person may be

convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 425, 571 A.2d 438, 441 (1990), *alloc. den.*, 525 Pa. 644, 581 A.2d 571. Malice has been defined as a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* at 425, 571 A.2d at 441 (*quoting Commonwealth v. Drum*, 58 Pa. 9, 15 (1868). "[M]alice imports the absence of justification." *Commonwealth v. Hill*, 427 Pa.Super. 440, 444, 629 A.2d 949, 951 (1993), (*citing Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973)). Thus, when a defendant claims self-defense, the Commonwealth must disprove the claim beyond a reasonable doubt. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978), *cert. den.*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663.

Because both the second and third issues involve the relationship between a claim of self-defense and the element of malice necessary to support a conviction for third degree murder, we address them together.

In discussing this relationship, our Supreme Court has stated:

The relationship between a claim of self-defense and the element of malice has been described as follows: "[i]n a prosecution for murder, evidence of provocation or self-defense tends to negate the malice required to prove murder." *Commonwealth v. Heatherington*, 477 Pa. 562, 568, 385 A.2d 338, 341 (1978). Further, in order to meet its burden of proof on the element of malice, the Commonwealth must exclude self-defense beyond a reasonable doubt. *Id.*

\* \* \* \* \* \*

Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim. *See*

*Commonwealth v. Hinchcliffe,* 479 Pa. 551, 556, 388 A.2d 1068, 1071 (1978) (fact finder may believe any, all, or none of any witness's testimony), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663.

\* \* \* \* \* \*

Moreover, where there is evidence from which a jury can reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Hinchcliffe, supra,* 479 Pa. at 557, 388 A.2d at 1071. It has long been the law of this Commonwealth that "the use of a deadly instrument on a vital part of the body is sufficient to establish the specific intent to kill required for a conviction of first degree murder." *Commonwealth v. Butler,* 446 Pa. 374, 378, 288 A.2d 800 (1972). There is no dispute herein that appellee stabbed the victim with a knife in his back and chest, inflicting a fatal wound to the heart. The jury was justified therefore in finding that the Commonwealth had established the element of malice beyond a reasonable doubt.

*Commonwealth v. Carbone,* 524 Pa. 551, 560–563, 574 A.2d 584, 589–590 (1990), *modified,* 526 Pa. 226, 585 A.2d 445 (footnote omitted). The inference serves a dual purpose; it permits the factfinder to infer malice, as well as a specific intent to kill. *Commonwealth v. Carbone,* 375 Pa.Super. 261, 544 A.2d 462 (1988), *rev'd on other grounds,* 524 Pa. 551, 574 A.2d 584 (1990). Thus, "[i]t is well settled that the intentional use of a deadly weapon on a vital part of the body raises a permissible inference of malice." *Commonwealth v. Hunter,* 381 Pa.Super. 606, 613, 554 A.2d 550, 553 (1989) (citations omitted). As can be inferred from the above quoted language of our Supreme Court in *Carbone,* such an inference of malice established through use of a deadly weapon on a vital part of the body is alone sufficient to sustain a finding of murder. *See also, Commonwealth v. Torres, supra.* In the case at bar, Appellant plunged a kitchen knife nine centimeters into the heart of Smith. The parties stipulated to the coroner's report which concluded that this stab wound, which entered the pericardial cavity and perforated the right ventricular wall,

was the cause of death. This evidence clearly gives rise to an inference of malice.

Appellant, citing to our Supreme Court's previous decisions in *Commonwealth v. McGuire*, 487 Pa. 208, 409 A.2d 313 (1979) and *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975), argues that the use of a knife to the decedent's chest in the case at bar cannot give rise to the inference of malice because such inference is negated by evidence presented by the Commonwealth which suggests that Appellant acted in self-defense, a concept mutually exclusive to malice. Contrary to Appellant's assertions, we are hard-pressed to conclude that the eyewitness testimony of either Mr. or Mrs. Durah presented evidence of self-defense such that the inference of malice is negated.[2] The Commonwealth's use of Appellant's statement in its case-in-chief does not mean that the Commonwealth vouched for its truthfulness, *Commonwealth v. Mahoney*, 460 Pa. 201, 331 A.2d 488 (1975), or otherwise qualify it as "Commonwealth's evidence" as referred to in *McGuire*. This evidence comes from the criminal defendant herself, and is therefore subject to a credibility determination by the factfinder, and does not, therefore, negate the inference. *See* our Supreme Court's decision in *Carbone, supra* (fact that a homicide defendant makes a self-defense claim in her confession does not itself prevent the Commonwealth from proving a malicious homicide).

The only evidence of self-defense came from Appellant herself. As is apparent from the guilty verdict, the trial court disbelieved Appellant's self-defense claim, and found the requisite malice to support the third degree murder conviction. After reviewing the record in the light most favorable to the Commonwealth, and granting all reasonable inferences in favor of the Commonwealth, we find sufficient evidence to

2. We are unpersuaded by Appellant's argument that evidence of prior violent acts, *in and of themselves,* negates malice. Rather, we concur with the Commonwealth's analysis that such acts must be viewed in combination with the act which gives rise to the killing. While Mr. Durah provided testimony that Smith physically assaulted Appellant in the past, he provided little testimony as to the actual confrontation leading to Smith's death.

support the conviction. Appellant's claims to the contrary are without merit.

As noted above, the inference of malice from the use of a deadly weapon on a vital part of the victim's body is a permissible one. *Commonwealth v. Hunter, supra.* Moreover, as stated by our Supreme Court in *Carbone,* as quoted above, if there is evidence from which the factfinder can infer malice, the Commonwealth has disproved self-defense beyond a reasonable doubt. However, the factfinder need not draw the inference. In the present case the theory of self-defense was placed at issue. While the evidence of the use of deadly force in self-defense can come from any source, it must speak to three specific elements: 1) the defendant was free from fault in provoking or continuing the difficulty which resulted in the killing; 2) the defendant must have reasonably believed that she was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save herself therefrom; and 3) the defendant did not violate any duty to retreat or avoid the danger. *See generally, Commonwealth v. Mayfield,* 401 Pa.Super. 560, 585 A.2d 1069 (1991) (*en banc*). While a claim of self-defense must include all three of these elements, and no burden is placed on the defendant, the Commonwealth need only disprove one of the elements in order to defeat a claim of self-defense. *Commonwealth v. McClain,* 402 Pa.Super. 636, 587 A.2d 798 (1991), *alloc. den.,* 528 Pa. 636, 598 A.2d 993. On appeal, Appellant claims that her trial counsel was ineffective for failing to introduce additional information and/or testimony, which was available at the time of trial, to corroborate her claim of self-defense. Thus, we reach the merits of Appellant's fourth issue.

The test used to evaluate claims of ineffectiveness of counsel is well-settled:

First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his client's interests. Finally, a showing must be made of how counsel's choice of action preju-

diced the client.... The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant.

*Commonwealth v. Nelson,* 389 Pa.Super. 417, 423, 567 A.2d 673, 676 (1989) (citations omitted). Appellant's claims of ineffectiveness are summarized as follows: 1) trial counsel's failure to present the victim's prior criminal arrest and conviction records, as well as police reports from Smith's arrests for acts of violence against Appellant, which would be most relevant in supporting her claim that the victim was a violent individual, that he was in fact the aggressor on the evening of his death, and that her fear of him was entirely reasonable; 2) trial counsel's failure to produce medical records documenting Appellant's hospital visits necessitated by beatings administered by Smith, which would also substantiate her claim that her fear of the decedent was reasonable; 3) the severe prejudice she suffered because of trial counsel's failure to present expert testimony that she was a battered woman who, by definition, was unable to resist her continued relationship with Smith, and who continued to love him, despite the abuse he inflicted upon her; 4) trial counsel's failure to present her testimony, despite Appellant's clear desire to testify on her own behalf; and 5) trial counsel's failure to object to the admission of "unauthenticated altered and prejudicial evidence" (Smith's blue hospital pants), and for failing to object to the improper impeachment of a Commonwealth witness (Mrs. Durah). Appellant's Brief on Reargument at p. 46.

After a thorough examination of the record, we conclude that there is arguable merit to each of Appellant's contentions that counsel was ineffective at trial. *See Commonwealth v. Guerrisi,* 297 Pa.Super. 245, 443 A.2d 818 (1982) (counsel's failure to present favorable demonstrative evidence, documentary evidence, and expert testimony constitutes ineffective assistance of counsel); *Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976) (counsel ineffective for failing to introduce evidence of defendant's hospitalization, most relevant to defendant's claim of self-defense); *Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989) (plurality) (where trial counsel

was found ineffective for failing to present expert testimony on the battered woman syndrome as a defense to homicide charges); *Commonwealth v. Preston*, 418 Pa.Super. 125, 613 A.2d 603 (1992) (standard described for ineffectiveness where counsel has not fully consulted accused of his right to testify; accused must demonstrate that counsel interfered with accused's freedom to testify, or counsel gave unreasonable advice; the decision to testify ultimately lies with the accused); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975) (where judgment of sentence was vacated pending an evidentiary hearing on appellant's ineffective assistance of counsel claim).

In the case before us there has not been an evidentiary hearing to determine whether trial counsel had a reasonable basis for his actions and/or omissions. Case law dictates that such a hearing is necessary. "When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the court below to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing." *Commonwealth v. Petras*, 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987) (citation omitted). We therefore vacate the judgment of sentence and remand to the lower court to determine what evidence, if any, was knowingly available to the defense and to determine whether or not counsel had a reasonable basis for not presenting such evidence and/or objecting to the admission of physical evidence by the Commonwealth. If counsel is found to be ineffective, the proper remedy is new trial. If counsel was not ineffective, then the judgment of sentence shall be reinstated.

One matter to be considered on remand is the "battered woman syndrome." Clearly, to date this syndrome has not been adopted as a separate defense in Pennsylvania. Moreover, the use and acceptance of such evidence, while discussed in several recent cases, remains unclear. In determining to what extent, if any, Appellant's previous counsel was ineffective for failing to introduce this expert testimony, it becomes

necessary to determine the precise level of acceptance this evidence has garnered in this state's jurisprudence. It is for this reason that a brief review of the "battered woman syndrome," as discussed in recent Pennsylvania appellate decisions, is in order.

In *Commonwealth v. Stonehouse, supra,* Justice Larsen in a lead opinion joined by Justices Papadakos and Stout, held that counsel in a homicide trial was ineffective for failing to request jury instructions which would require the jury to consider the cumulative effects of psychological and physical abuse when assessing the reasonableness of a battered person's fear of imminent danger of death or serious bodily harm with respect to her claim of self-defense, and when considering what constitutes sufficient provocation to support a conviction for voluntary manslaughter. Such instructions were necessary, wrote Justice Larsen, to instruct the jury as to the legal relevance of the history of abuse presented at trial on Appellant's behalf. Although the issue was not before the court, the lead opinion next addressed whether "trial counsel was ineffective in failing to present expert testimony regarding the characteristics of the victims of psychological and physical abuse, where uncontradicted testimony revealed that appellant was the victim of such abuse, and the jury, without the aid of expert testimony, rendered a verdict based upon erroneous myths concerning the victims of such abuse." *Id.,* 521 Pa. at 61, 555 A.2d at 782. Finding that there was no reasonable basis for trial counsel not to call an expert witness to "counter the erroneous battered woman myths upon which the Commonwealth built its case[,]" and finding the absence of such testimony prejudicial, the lead opinion stated, "where a pattern of battering has been shown, the battered woman syndrome *must* be presented to the jury through the introduction of relevant evidence." *Id.* at 65–66, 555 A.2d at 784–785 (footnote omitted) (emphasis added).

Justice Larsen's lead opinion in *Stonehouse* did not garner enough joinders to establish it as precedent. In a concurring opinion joined by Justice Flaherty, Justice Zappala stated his agreement with the lead opinion's disposition of the ineffec-

tiveness claims for failing to request the various jury instructions, but stated that he would not have addressed the question of whether the "battered woman syndrome" was recognizable as a separate defense under the law in Pennsylvania. Recognizing that Stonehouse, in her own brief, stated that the self-defense issue was not to be mischaracterized on appeal as a failure to raise the syndrome, Justice Zappala concluded that resolution of the issue was best left to a time when the issue was squarely before the Court. In dissent, Chief Justice Nix, joined by the late Justice McDermott, also recognized that the "battered woman syndrome" was not properly before the Court.

Two years later, our Supreme Court was squarely faced with an issue involving the battered woman syndrome, but curiously, the majority opinion, authored by Justice Larsen, did not mention it in reaching its determination. In *Commonwealth v. Dillon,* 386 Pa.Super. 236, 562 A.2d 885 (1989), a panel of this Court affirmed the trial court's decision in a homicide case to exclude as irrelevant testimony of appellant's stepson that the victim became mean and vicious when he was drunk and its decision to exclude expert testimony regarding the battered woman syndrome, because it was not recognized in this Commonwealth as a defense in homicide cases.[3] The high court, however, reversed this Court's decision by finding error in our analysis of the former while not addressing the latter. *See generally, Commonwealth v. Dillon,* 528 Pa. 417, 598 A.2d 963 (1991). In his concurring opinion, Chief Justice Nix, joined by Justice Flaherty and the late Justice McDermott, stated that "evidence regarding the cumulative effects of wife-beating and general spousal abuse *must* be admissible to bear upon the 'reasonableness' of the conduct by a party who

3. This Court also found that it would have been improper to allow expert testimony under the facts presented because, unlike the uncontradicted testimony that the defendant in *Stonehouse* was a battered woman, whether the defendant was a battered woman was sharply disputed by the Commonwealth. This Court further opined that the use of expert testimony to explain the statement's made by the defendant after the killing would invade the province of the jury. Additional claims of error with regard to the jury instructions were found to be waived or otherwise without merit.

312

claims self-defense to a charge of spousal homicide." *Id.* at 422, 598 A.2d at 966 (Nix, C.J., concurring) (emphasis added). Chief Justice Nix then wrote:

Presently, the law of this Commonwealth does not recognize the battered woman syndrome as a separate and distinct defense to homicide, and I am not proposing that we do so now. What I am suggesting is that, when presenting all relevant evidence in a proper analysis of justification under section 505(a), the defendant may offer evidence relating to the battered woman syndrome as additional probative information relating to the "reasonable-belief" requirement.

\*     \*     \*     \*     \*     \*

I am not suggesting that once a defendant has established that she was a victim of the deceased's habitual emotional and/or physical abuse, the matter is resolved. I only recommend this as one factor to be considered in determining the reasonableness of the defendant's belief at the time of the homicide that deadly force was necessary.

*Id.* at 425–426, 598 A.2d at 967 (footnote omitted). In his concurring opinion joined by Justices Larsen and Papadakos, Justice Cappy recognized that the issue of whether the trial court erred in excluding expert testimony relating to the battered woman syndrome in a self-defense case was properly before the Court and should be resolved. Justice Cappy would find that such testimony was admissible both as an aid to the jury in explaining matters beyond common knowledge and experience, and as relevant evidence of the defendant's state of mind. Justice Cappy wrote:

As the cases cited herein demonstrate, permitting expert testimony in a case such a[s] this is in complete accord with our existing case law. I do not believe we would be creating a new "battered woman's defense" by permitting expert testimony in the case *sub judice,* nor would I suggest that we attempt to do so here. The defense asserted is self-defense. The testimony of the expert is relevant to the defendant's state of mind concerning self-defense and is helpful to the jury in evaluating the testimony.

*Id.* at 437, 598 A.2d at 973. Thus, it appears Justice Cappy agrees with Chief Justice Nix that competent expert testimony would establish additional probative evidence of the defendant's reasonable belief in using deadly force at the time of the incident giving rise to the homicide charges.

Although the several justices of the Supreme Court have given their own opinions in *Stonehouse* and *Dillon* about the use of expert testimony in presenting evidence as to the reasonableness of the defendant's belief that deadly force was necessary to protect oneself from imminent death or serious bodily injury, no case decided in this Commonwealth to this day has stated that expert testimony regarding the battered woman syndrome is inadmissible or admissible as probative evidence of the defendant's state of mind as it relates to the theory of self-defense. Given the tenor of the various opinions quoted above, and the reasons given therein, today we hold that such evidence is admissible as probative evidence of the defendant's state of mind as it relates to a theory of self-defense. The syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant. To the extent this Court's decision in *Dillon* states to the contrary, we now disapprove of such rationale. Further, we state our disapproval of the statement in *Commonwealth v. Kacsmar*, 421 Pa.Super. 64, 617 A.2d 725 (1992), that our Supreme Court in *Stonehouse* "held that trial counsel rendered ineffective assistance by failing to present expert testimony on the battered woman syndrome as a defense to homicide charges." *Id.* at 77, 617 A.2d at 731. We also disapprove of any inference from that decision that a new defense to homicide has been created. We do, however, agree with the statements of the panel that expert testimony regarding a "battered person syndrome" was relevant to the appellant's state of mind and is not introduced to improperly bolster the credibility of the defendant, but rather, to aid the jury in evaluating the defendant's behavior and state of mind given

the abusive environment which existed. While finding expert testimony with regard to the battered woman syndrome admissible, we do not hold, however, that failure to present such evidence equates to a finding of *per se* ineffectiveness, particularly in cases such as the instant matter, where trial counsel has stated on the record that he was prepared to explain why he chose not to call an available expert witness. Thus, it is with this guidance that we remand for a hearing on trial counsel's alleged ineffectiveness in failing to present expert testimony as to the battered woman syndrome, as well as all other claims enumerated above.

The judgment of sentence is vacated and the case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.

ROWLEY, P.J., files a concurring statement joined by TAMILIA and POPOVICH, JJ.

ROWLEY, President Judge, concurring.

I join in the Majority's decision in all regards, save for its statement "that [battered woman syndrome] evidence is admissible [in a homicide trial] as probative evidence of the defendant's state of mind as it relates to a theory of self-defense." It is my belief that the Majority's conclusion in this regard is dicta because it is unnecessary to a disposition of the instant appeal. A specific holding concerning the admissibility of battered woman syndrome evidence in homicide cases is better left for a day when that issue has been squarely presented to this Court.

TAMILIA and POPOVICH, JJ., join in this concurring statement by ROWLEY, P.J.