J-A06018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DOMINIQUE ERNEICE JONES :
:
Appellant : No. 403 WDA 2020

Appeal from the Judgment of Sentence Entered February 24, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000429-2019


BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED: June 11, 2021**

Dominique Erneice Jones appeals from the judgment of sentence, entered in the Court of Common Pleas of Fayette County, after a jury convicted her of third-degree murder and three counts of endangering the welfare of children (EWOC).  After careful review, we affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On December 25, 2018, [Jones, along with Decedent,] Tre McCargo, and their three minor children walked into the Holiday Inn Express in Uniontown, Pennsylvania.  They were staying in Room 110, which [Jones] had previously checked into.  Video surveillance from the hotel showed the five of them walking past the front desk several times carrying Christmas presents.
>
> The five of them went into their room for some time.  Suddenly, [Decedent] came running around a corner into the front lobby bleeding from his neck, which he was holding.  [Decedent] asked the front desk manager to call 9-1-1, which she did.  Because it was Christmas Day, only one housekeeper was on staff.  She was called down to the lobby to help.  While the manager was on the

phone with the state police, the housekeeper held pressure on [] [Decedent]'s neck with towels. [Decedent] was lying down at this point.

The police soon arrived and took over applying pressure on [Decedent]'s neck. [Decedent] was then transported to the hospital, where he died from his injury. [Jones] was taken into custody and charged with one count of criminal homicide. She was also charged with three counts of [EWOC] for leaving the knife on the bed near the minor children and going to the bathroom after stabbing [Decedent].

Despite the nearly-1700 pages of trial transcripts, these facts were largely undisputed: [Jones] stabbed [Decedent] in the neck in their room at the Holiday Inn Express where their children were present, and no intervening cause led to [Decedent]'s death. The dispute at trial was *why* [Jones] stabbed [Decedent]. [Jones]'s defense was that she suffered from battered-woman syndrome[1] as a result of years of abuse from [Decedent], and that she was in fear for her life when she stabbed him. The Commonwealth portrayed [Jones] as a jealous ex-girlfriend who stabbed [Decedent] in a fit of rage[, suspecting he was involved with another woman].

The issues on appeal largely deal with the admissibility of certain evidence that [Jones] wanted to introduce at trial regarding [Decedent]'s [past] and how [Jones]'s knowledge of his past affected her state of mind when she stabbed him. Specifically, [Jones] wanted to introduce evidence that [Decedent] was involved in "violent gang activity," that [he] was a "major drug dealer," that [he] kept guns in his house, and that [he] had prior arrests in 2010 and 2013. Additionally, the Commonwealth wanted to introduce evidence of an incident in 2015 where [Jones] stabbed [Decedent], to which [Jones] objected. After a pretrial hearing on that evidence, which took place on December 17, 2019, th[e c]ourt ruled that [Jones] could not introduce evidence regarding the allegations that [Decedent] was in a gang or that

---

[1] "[Battered woman] syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Commonwealth v. Miller*, 634 A.2d 614, 622 (Pa. Super. 1993).

he was a drug dealer, or that he kept guns in his house. Th[e c]ourt also ruled that the prior arrests of [Decedent], which did not lead to convictions for violent offenses, were inadmissible. Finally, th[e c]ourt ruled that the Commonwealth could introduce evidence of the 2015 stabbing.

[Jones] was, however, permitted to present evidence at trial regarding prior instances of abuse she suffered at the hands of [Decedent]. [Jones] testified at trial that [she] and [Decedent] began dating[] and she became pregnant with their first child, [S.M.], in 2010. [Jones] was 18 or 19 at the time and [Decedent] was 16 or 17. During one incident when she was pregnant with [S.M., Decedent] was verbally abusive towards [Jones] and punched her in the face. [Decedent] apologized to her, saying he didn't know why he did it.

During another incident, [Decedent] slammed [Jones] through a wall. Another time, [Decedent] punched [Jones] in the stomach when she was pregnant, which caused her to have a miscarriage. After that, [Jones] became pregnant again, and [Decedent] kicked her in the stomach, which caused her to have a second miscarriage. Later, [Jones] was pregnant again, and there was an incident where [Decedent] grabbed her, shook her, and choked her.

[Decedent] also gave [Jones] sexually transmitted diseases. [Decedent] would not allow [Jones] to use birth control or tampons, he did not allow her to work, and they had sex whenever he demanded it. [Decedent] once pointed a gun at [Jones] and pistol whipped her, because he did not like an outfit she was wearing. He punched her in the mouth on another occasion. He called her names and once threatened to kill her. In 2018, [Decedent] weighed approximately 240 pounds and [Jones] weighed about 119 [pounds].

However, the trial testimony of [S.M.]—the daughter of [Jones] and [Decedent] who was eight years old in 2018—was that [Jones] was not provoked when she stabbed [Decedent] in the hotel room.

According to [Jones], on the day before the stabbing[,] she found text messages on [Decedent]'s phone that led her to believe that [he] may have been romantically involved with a mutual friend. On Christmas morning, [Decedent] and the children opened Christmas presents at his mother's house without [Jones]. [Jones] also testified that she took children to the hotel and did

not plan to return them to his mother's house for Christmas dinner.  An argument ensued, [Decedent] became very angry and physically abusive, and that's when [she] stabbed him.

Trial Court Opinion, 7/24/20, at 1-5 (internal citations omitted) (emphasis in original).

Following trial, the jury found Jones guilty of the above-stated crimes. The trial court sentenced Jones to an aggregate term of 6 to 12 years of incarceration.  Jones timely filed a notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  She raises the following issues for our review:

1. Did the trial court err when it barred all testimony regarding [Decedent]'s violent gang activity known to [Jones] in a case of self-defense[, where] this evidence goes to the state of mind of [Jones] as it relates to self[-]defense?

2. Did the trial court err when it would not permit [Jones] to introduce [Decedent]'s criminal record for violence known to [her where] this evidence goes to the state of mind of [Jones] as it relates to self[-]defense?

Brief of Appellant, at 3 (unnecessary capitalization omitted).

Both of Jones's issues on appeal challenge evidentiary rulings made by the trial court.  Our standard of review is well-settled:

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference.  Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill[-]will[,] or partiality, as shown by the evidence of record.  Furthermore, if in reaching a conclusion the trial court [overrides] or misapplies the law,

discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Thompson***, 106 A.3d 742, 754 (Pa. Super. 2014) (internal citations and quotation marks omitted). The Pennsylvania Rules of Evidence provide that all relevant evidence is admissible, except as otherwise provided by law. ***See*** Pa.R.E. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Relevant evidence may only be excluded where its probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. ***See*** Pa.R.E. 403.

Jones first argues that the trial court erred by failing to admit evidence of Decedent's membership in a gang[2] where such evidence goes to her state of mind at the time of the stabbing. "Had she been permitted, [Jones] would have offered testimony that [Decedent] was a member of a violent street gang in Uniontown called the 'Killa Squad' who terrorized the neighborhood, assaulted police, carried guns, shot people[,] and sold drugs." Brief of Appellant, at 15.

---

[2] The trial court notes that it is not illegal to just "be in a gang." Trial Court Opinion, 7/24/20, at 8; ***but see*** Pa.C.S.A § 5131(a), (e) (prohibiting recruitment of "criminal gang" members where "criminal gang" is defined as any group of three or more persons "that has as one of its primary activities the commission of criminal or delinquent acts"). Here, there was no evidence that Decedent committed the offense of recruiting criminal gang members.

Here, the issue is whether Decedent's alleged gang membership, or Jones's knowledge thereof, made it more or less probable that Jones reasonably feared for her life when she stabbed him in their hotel room in 2018. Jones did not allege that she personally witnessed or heard of any specific crimes or bad acts committed by Decedent related to any gang. Rather, Jones explained that, in 2010, when Decedent was a juvenile, Jones learned from reading an affidavit of probable cause for Decedent's arrest that he was involved in an organization known as the "Killa Squad." *See* N.T. Omnibus Pretrial Motion Proceedings, 8/21/19, at 124-36. Ultimately, the charges for which Decedent was arrested in 2010[3] were dismissed, except for a disorderly conduct offense. Decedent was never convicted of any violent crime, including murder, conspiracy to commit murder, or attempted murder, in connection with the "Killa Squad," as its name suggests. Moreover, Jones was not a victim of any gang-related activity. Under these circumstances, we conclude that the trial court did not err or abuse its discretion in finding the evidence irrelevant where "the allegation in an affidavit of probable cause from 2010—when [Decedent] was a juvenile—that [he] was in a gang was not indicative of [Jones]'s state of mind in 2018 when she stabbed [him] during a domestic argument." Trial Court Opinion, 7/24/20, at 8.

---

[3] These charges include aggravated assault, criminal conspiracy to commit aggravated assault, simple assault, riot, criminal conspiracy to commit riot, and disorderly conduct. *See* N.T. Omnibus Pretrial Motion Proceedings, 8/21/19, at 133.

We further agree that, even if this evidence were relevant, its probative value is far outweighed by the danger of unfair prejudice. Jones sought to inform the jury that Decedent was a member of the Uniontown "Killa Squad," the unavoidable effect of which is to suggest that he may have been involved in killings in the area. This is despite the fact that Jones had no personal knowledge of any violent gang activity on the part of Decedent, and there was no evidence Decedent was ever involved in any killings or attempted killings. The trial court is correct that:

> [If the] jury [were] to hear that [Decedent] was in a gang [called the "Killa Squad"], [it] could have improperly influenced them to decide [Jones]'s fate based on whether they believed the validity of such testimony. A jury that believed [Decedent] was in a gang might have acquitted [Jones] based on a belief that [his] life was not worth anything, rather than based on the critical issue of whether [Jones] was acting in self-defense in 2018.

*Id.* at 9; *see also Commonwealth v. Collins*, 70 A.3d 1245, 1252 (Pa. Super. 2013) (discerning no abuse of discretion on part of trial court in concluding testimony regarding decedent's gang membership was attempt by defense to impugn victim's character and effect would have been more prejudicial than probative).

Next, Jones argues that the trial court erred by excluding evidence of Decedent's criminal record, of which Jones was aware, where such evidence goes to Jones's state of mind at the time of the stabbing. Specifically, Jones sought to introduce evidence that Decedent was arrested for aggravated assault, criminal conspiracy to commit aggravated assault, simple assault,

riot, criminal conspiracy to commit riot, and disorderly conduct in 2010, as well as unspecified "similar" charges in 2013. All of these charges were all dismissed with the exception of disorderly conduct in 2010. *See* Brief of Appellant, at 20.

In *Commonwealth v. Darby*, 373 A.2d 1073 (Pa. 1977), our Supreme Court held that evidence of a victim's arrests for violent crimes can be used to show that the defendant reasonably believed his life was in danger when confronting the victim, even though no convictions resulted from such arrests. *See id.* at 1074. In *Darby*, the defendant was permitted to testify that, at the time of the killing, he was aware the victim had been convicted of three criminal charges. The trial court precluded the defendant from testifying that he was aware of instances prior to the killing in which the victim had been arrested for weapons-related offenses, assault with intent to kill, and for being an accessory after-the-fact to murder. *Id.* In concluding that the excluded evidence should have been admitted, the Court noted that the arrest record and defendant's testimony regarding his knowledge of such arrests "were offered to corroborate [the defendant's] knowledge of [the victim's] quarrelsome and violent character to show that [defendant] reasonably believed that his life was in danger." *Id.* at 1074-75.

We agree with the trial court that the facts of this case are readily distinguishable from *Darby*.

> **Unlike the victim in** [*Darby*, **Decedent**] **was a minor when he was arrested** for aggravated assault **in 2010**. Following that arrest, [Decedent] pleaded guilty to disorderly conduct.

- 8 -

* * *

> **The** [unspecified] **charges stemming from the 2013 arrest were all dismissed**. Th[e trial c]ourt believes that the 2013 arrest record was being offered to show the violent propensities of [Decedent] rather than to corroborate [Jones]'s knowledge that [Decedent] was a quarrelsome and violent person. At trial, [**Jones**] **was allowed to and did**[,] **in fact**[,] **present testimony that** [**Decedent**] **was violent and abusive towards her. This consisted not only of the testimony of** [**Jones**] **herself, but also in the corroborating testimony of both** [S.M.]—who is **the daughter** of [Jones] and [Decedent]—**and** Melony Ferdinandus—who is **the second cousin of** [**Jones**].
>
> The 2013 arrest is also distinguishable from the facts described in *Darby*.

* * *

> Here, **the charges against** [**Decedent**] **in 2010 and 2013 were less serious than in *Darby*, where the victim was charged with being an accessory after**[-]**the**[-]**fact to murder and with assault with intent to kill**. Further, the 2013 arrest of [Decedent] was irrelevant to [Jones]'s state of mind when she stabbed [him] in 2018. [Jones] already knew [Decedent] was violent and quarrelsome in 2018—she testified to as much. **Unlike the relationship between the appellant and victim in *Darby*,** [**Jones**] **was intimately familiar with** [**Decedent**] **through their long relationship**. As a result, t[he c]ourt does not believe that the 2013 arrest was offered to corroborate her testimony regarding abuse—which was corroborated by other witnesses—but instead was offered to show the violent propensities of [Decedent]. The evidence was inadmissible for such purpose.[4]

Trial Court Opinion, 7/24/20, at 12 (emphasis added).

Where, as here, (1) Jones introduced extensive and corroborating testimony regarding her history of abuse with Decedent, (2) the crimes for

---

[4] "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 401(b).

which Decedent was arrested did not involve any weapons, killing, or attempted killing, and (3) Decedent was a juvenile at the time of his arrest, we find that the trial court did not abuse its discretion in precluding Jones from introducing evidence of Decedent's prior arrests to corroborate Jones's knowledge of his violent character and that she reasonably feared for her life when she stabbed him in their hotel room. **Cf. Darby**, **supra**.

In sum, the trial court properly exercised its discretion in ruling on the admissibility of Jones's evidence. **Thompson**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/11/2021