J-S13015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                 :             PENNSYLVANIA
                                                 :

             v.                           :
                                               :
                                             :

DANISHKA JAILEEN OTERO-VELEZ    :
                                             :

          Appellant         :     No. 1553 MDA 2024

Appeal from the PCRA Order Entered September 24, 2024
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004032-2019

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: MAY 2, 2025**

Danishka Jaileen Otero-Velez appeals from the order entered September 24, 2024, denying her Petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Otero-Velez argues the PCRA court erred in finding trial counsel was not ineffective for failing to pursue a battered woman's defense at trial. After careful review, we affirm.

The PCRA court set forth the relevant factual history:

> On November 5, 2018, Velmarie Velez-Negron and Jason Cruz were outside of their shared residence at 1250 Hill Road, Reading, Berks County, Pennsylvania, around 6:00 p.m. smoking a cigarette. Once outside, Velez-Negron and Cruz observed their neighbor, [Otero-Velez] having an argument with her boyfriend, Ranciel Natera ("victim"). The victim told Cruz to go inside "as this (the argument) wasn't for him" so Cruz went back inside. The argument was about the victim having impregnated another woman. This had been an ongoing problem that [Otero-Velez] and the victim had argued about for weeks.

Once Cruz was back inside, the conversation between [Otero-Velez] and the victim became very heated. [Otero-Velez] pulled out a gun, pointed it at the victim, and shot him in the chest. She then put the gun to the victim's head and shot him again. The shots were approximately two to three seconds apart. Velez-Negron witnessed the shooting and quickly rushed back into her apartment.

After shooting the victim, [Otero-Velez] went to the apartment of her neighbors, Cruz and Velez-Negron. Once inside, [Otero-Velez] admitted to the couple that she had shot the victim. [Otero-Velez] then asked for help moving the body and hiding the gun. Cruz refused to help but Velez-Negron agreed to help move the body. Both women then went outside, and [Otero-Velez] moved the victim's body.

When the police arrived at the scene, the two women were ordered back inside the apartment while the police remained outside to investigate. [Police did not observe either woman touch the victim's body.] Once inside, [Otero-Velez] pointed the gun at Cruz and demanded that he not tell the police anything about what they knew, not to tell them that she was the victim's girlfriend, and to call her by a different name. [Otero-Velez] then took the gun apart by removing the magazine and hiding it in her "private area."

[Otero-Velez] then called her mom to come to the apartment. Soon thereafter, law enforcement came into the apartment to continue their investigation. Upon being questioned, [Otero-Velez] told them her name was "Carmen" and that she was there visiting a friend. [Otero-Velez's] mother and sister quickly arrived, and [Otero-Velez] gave her sister part of the gun to take.

During the investigation, Cruz snuck away and contacted Odaly Portes, Cruz'[s] employer and the owner of 1250 Hill Road. Cruz told Portes there was an emergency at the apartment building. Portes arrived shortly thereafter with a business associate, Manny Burgos.

Upon their arrival, Portes and Burgos remained outside and were made aware that the victim had died. [Otero-Velez] walked over to Portes and Burgos wearing a hoodie. Portes and Burgos initially offered their condolences to her, but she replied "F… your condolences. I did it. I killed him. He went off and had a baby …

with this chick." She told the two men that the victim deserved it. [Otero-Velez] told them that she had previously told the victim that if the baby was his that she was going to kill him. She told Burgos that after the paternity test confirmed the baby was his, she followed through. Burgos stated that [Otero-Velez's] anger was directed entirely to the paternity test. When asked who may have witnessed the murder, [Otero-Velez] identified her neighbors as witnesses and said that she "could smoke Cruz" and "could send some of her people." [Otero-Velez] then asked Portes for money to get out of town. Fearful, Portes gave her $100. Both Portes and Burgos then observed Otero-Velez enter a red/burgundy Mazda 6 four door sedan driven by two other females and leave the area.

Later that evening, Portes and Cruz both gave full statements to the police about everything that had occurred, including the fact that [Otero-Velez] was the victim's girlfriend. Acting on this information, the police searched [Otero-Velez's] car and found travel bags, trash bags, and two purses — each of which had live cartridges in them. Efforts by the police to locate [Otero-Velez] were unsuccessful. In fact, [Otero-Velez] had fled to Florida [and was arrested there on December 4, 2018].

Approximately one year later, on October 8, 201[9], a man who was fishing at a state park in Schuylkill County caught a gun on his line. The gun was turned over to police and was found to be registered to [Otero-Velez]. A ballistics examination showed that the gun that was found by the fisherman was the same gun that was used in the murder of the victim. …

During trial, Hailee Kagarise testified on behalf of the Commonwealth. She confirmed that she was impregnated by the victim. She further testified that both [Otero-Velez] and the victim found out she was pregnant in January of 2018 and came to her residence with a pregnancy test. According to Ms. Kagarise, [Otero-Velez] was not pleased about this and told the victim that the child was not his. Later in July of 2018, [Otero-Velez] went to Kagarise's house and threatened her regarding the pregnancy.

Shortly after Kagarise gave birth on September 15, 2018, the victim and [Otero-Velez] presented her with a mail-in DNA test. Evidence showed that [Otero-Velez] mailed the test in and awaited the results. Kagarise found out from the victim's nephew that the victim was the father of her baby after the murder had

- 3 -

occurred. The DNA report was eventually turned over to law enforcement by Kagarise.

PCRA Court Opinion, 9/26/24, at 3-6 (record citations, footnotes, and brackets omitted).

Otero-Velez proceeded to a jury trial held on September 7-8, 2021. The jury found Otero-Velez guilty of murder of the first degree, murder of the third degree, two counts of aggravated assault, two counts of intimidation of a witness, and three counts of terroristic threats.[1] On September 10, 2021, Otero-Velez was sentenced to life imprisonment for the charge of murder of the first degree. All other sentences were to run concurrently. This Court affirmed the judgment of sentence on July 20, 2022. *See Commonwealth v. Otero-Velez*, 283 A.3d 385, 1279 MDA 2021 (Pa. Super. filed July 20, 2022) (unpublished memorandum). Otero-Velez did not petition our Supreme Court for allowance of appeal.

On August 1, 2023, Otero-Velez, through her attorney, filed a timely PCRA petition. A hearing was held on September 7, 2023. During that hearing, Otero-Velez's trial counsel, Sean Fitzgerald, Esquire, testified and Otero-Velez's mother, Lillianette Velez-Ventura, testified. Velez-Ventura testified to prior acts of abuse the victim allegedly committed against Otero-Velez. Otero-Velez did not testify.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), 2702(a)(1), 2702(a)(4), 4952(a)(1), and 2706(a)(1), respectively.

The PCRA court denied Otero-Velez's PCRA petition on September 24, 2024. Otero-Velez filed a timely notice of appeal and complied with the PCRA court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b).

Otero-Velez raises one claim for our review:

Whether the [PCRA] court erred in denying … Otero-Velez's [PCRA] petition on an ineffective assistance of counsel claim where trial counsel failed to investigate [her] psychiatric history and present testimony to establish battered women's syndrome limited capacity defense[?]

Appellant's Brief, at 5.

We review an order denying a PCRA petition "to determin[e] whether the findings of the PCRA court are supported by the record and free from legal error. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review." **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) (citations omitted).

Otero-Velez argues counsel was ineffective. Pursuant to the PCRA:

[A] PCRA petitioner will be granted relief only when he [or she] proves, by a preponderance of the evidence, that his [or her] conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

**Id.** (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)) (internal quotation marks and brackets omitted). Counsel is presumed to be effective and "a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner." **Id.** (citation omitted). Otero-Velez therefore must prove: "(1) the underlying legal issue has arguable merit; (2) counsel's actions

- 5 -

lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission." **Id.** at 533 (citation omitted).

As Otero-Velez's only claim resolves around battered woman's syndrome, we begin with a brief description of the syndrome and how it may be used as a defense. "A battered woman is a woman who is repeatedly subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights." **Commonwealth v. Stonehouse**, 555 A.2d 772, 783 (Pa. 1989) (opinion announcing the judgment of the court) (citation omitted).[2] In **Stonehouse**, the Pennsylvania Supreme Court evaluated a number of the myths surrounding battered woman's syndrome. **See id.** Although **Stonehouse** was decided in 1989, a number of those myths still survive today. These myths "ultimately place the blame for battering on the battered victim." **Id.** The Court found battered woman's syndrome was "not within the ordinary training, knowledge, intelligence and experience of jurors" and that expert testimony would be necessary to educate the jurors about it. **Id.** at 782-83.

This Court held that battered woman's syndrome is not a defense in and of itself. **See Commonwealth v. Miller**, 634 A.2d 614, 622 (Pa. Super. 1993)

---

[2] Three justices joined the lead opinion in **Stonehouse**, however, the other four found that the battered woman's syndrome issue was not properly before the Court for review. **See Stonehouse**, 555 A.2d at 785 (concurring), 785-86 (dissenting).

(*en banc*). "[R]ather, [battered woman's syndrome] is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Id.* Therefore, evidence related to battered woman's syndrome is only relevant and admissible if proceeding under the theory of self-defense. *See id.*; *Commonwealth v. Tressler*, 317 A.3d 576, 704 WDA 2023, at *4 (Pa. Super. filed March 7, 2024) (unpublished memorandum) (holding that counsel was not ineffective for failing to pursue a battered woman's syndrome defense as the defendant refused to allow trial counsel to pursue self-defense).[3]

> While the evidence of the use of deadly force in self-defense can come from any source, it must speak to three specific elements: 1) the defendant was free from fault in provoking or continuing the difficulty which resulted in the killing; 2) the defendant must have reasonably believed that she was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save herself therefrom; and 3) the defendant did not violate any duty to retreat or avoid the danger.

*Miller*, 634 A.2d at 618-19 (citation omitted).

With this background in mind, we turn to Otero-Velez's claim. Otero-Velez argues trial counsel was ineffective for failing "to pursue a psychiatric history and limited capacity defense[.]" Appellant's Brief, at 15. Otero-Velez did not provide us, nor can we find, any support in Pennsylvania for a "limited

---

[3] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

capacity defense." It is possible Otero-Velez is confusing "limited capacity defense" with "diminished capacity defense." ***See id.*** at 16 (noting trial counsel considered a diminished capacity defense prior to trial).

Otero-Velez does not argue counsel was ineffective for failing to pursue self-defense. Instead, she argues that battered woman's syndrome would establish a "limited capacity defense." Appellant's Brief, at 14-15. Otero-Velez has not presented any support for her assertion that battered woman's syndrome is admissible to support a diminished capacity defense. Furthermore, we cannot find any support in Pennsylvania law for this contention. Without a more developed argument and record, and in light of ***Miller*** and ***Tressler*** restricting evidence of battered woman's syndrome to self-defense cases, we decline to hold prior counsel ineffective for failing to argue battered woman's syndrome as evidence to support a diminished capacity defense. ***See Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011) (noting that diminished capacity "is an extremely limited defense" that requires either a "mental defect" or intoxication) (citations omitted). Counsel cannot be held ineffective for failing to raise a defense that our Courts have not recognized.

Furthermore, trial counsel testified at the PCRA hearing that he did consider a diminished capacity defense. ***See*** N.T. PCRA Hearing, 9/7/23, at 13. Trial counsel had two psychiatric evaluations performed by Dr. Rotenberg and reviewed the reports Dr. Rotenberg drafted after his evaluations. ***See id.***

at 6, 7, 14-15. The second report drafted by Dr. Rotenberg was admitted as an exhibit at the PCRA hearing. *See id.* at 25. In this report, Dr. Rotenberg opined that Otero-Velez "is not suffering from any major mental illness." *See id.* at Exhibit 1, at 6. Otero-Velez did not offer an expert at the PCRA hearing to counter this contention.

As no evidence was presented that Otero-Velez suffered from a "mental defect" as required for a diminished capacity defense, trial counsel cannot be ineffective for failing to pursue such a defense at trial. *See Commonwealth v. Philistin*, 53 A.3d 1, 10 (Pa. 2012) ("Counsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted).

We further note that even if we were to review this under the recognized theory of self-defense, we would find Otero-Velez has not met her burden. While evidence of self-defense may come from sources other than the defendant, there must be some evidence of self-defense before the matter may be submitted to the jury. *See Miller*, 634 A.2d at 618-19. Otero-Velez's mother cannot provide that evidence as she was not present at the time the shots were fired. *See* N.T. PCRA Hearing, 9/7/23, at 36. The eyewitness to the shooting testified at trial that the victim did not have a weapon, did not threaten Otero-Velez, and did not make any movement toward Otero-Velez before she shot him. *See* N.T. Trial, 9/7/21, at 114. As there was no evidence presented of self-defense, Otero-Velez cannot now claim trial counsel was

ineffective for failing to pursue a self-defense claim with evidence of battered woman's syndrome to support it. **See Miller**, 634 A.2d at 622.

Because Otero-Velez has not presented any evidence of self-defense necessary to allow admission of battered woman's syndrome nor has she established she suffered from a "mental defect" necessary for a diminished capacity defense, we affirm the order of the PCRA court denying her PCRA petition.[4]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/02/2025

---

[4] We note we are affirming on a different basis than the one relied on by the PCRA court, but we "may affirm the decision of a PCRA court if there is any basis on the record" even if it is on a different basis. **Commonwealth v. Pou**, 201 A.3d 735, 740 (Pa. Super. 2018) (citation omitted).