J-S23040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SANDRA DELVALLE | : | |
| | : | |
| Appellant | : | No. 2469 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 31, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001260-2019

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 23, 2024**

Appellant, Sandra DelValle, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following her jury trial conviction for third-degree murder.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 13, 2019, officers responded to a 911 call in Pocono Township, Pennsylvania, in which Appellant stated that she had shot her paramour, Joevandie Latorre ("Victim").  Appellant told the operator that she shot Victim by accident while he was trying to stab her with a knife, that he was going to die, and that she needed help.  When police arrived, they went into the house and discovered Victim lying on his back on the floor covered in blood.  Officers

_____

[1] 18 Pa.C.S.A. § 2502(c).

saw a handgun on the kitchen table and a paring knife on the floor under the table. Victim had no pulse and when paramedics arrived at the scene, they found no signs of life. The coroner later confirmed that Victim had died of a single gunshot wound to the chest.

After EMS confirmed that Appellant was not injured, she was led to a patrol car where she waited while officers responded to the scene. Eventually, after clearing the inside of the house, Corporal Eric Rath returned to the patrol car to speak with Appellant, who was hysterical. Corporal Rath attempted to calm Appellant down and asked her what had occurred. Appellant explained to Corporal Rath that she and Victim had argued about drugs, and during the argument Victim went to the kitchen, grabbed a paring knife, and attempted to stab her. Appellant then ran upstairs, got a gun, and returned downstairs confronting Victim, who had left the living room and was in his "mancave." Appellant claimed that Victim came into the kitchen and charged at her with the knife. At that point, Appellant maintained that she shot Victim by accident. (**See** N.T. Trial, 8/4/21, at 163-66; Commonwealth's Exhibit 11). Corporal Rath did not observe any injuries on Appellant. After further investigation, police arrested Appellant and charged her with homicide.

Prior to trial, Appellant provided the Commonwealth with a copy of a report prepared by Dr. Cynthia Lischick, Ph.D., an expert in battered woman's syndrome. Appellant intended to call Dr. Lischick at trial and to introduce her report into evidence to establish a claim of self-defense. The Commonwealth

filed a motion to preclude Dr. Lischick's testimony on February 26, 2021. The trial court denied the motion on March 26, 2021. In doing so, the court explained that expert opinion evidence regarding Appellant's state of mind on the question of reasonable belief of self-defense was relevant, but the expert testimony could not be used to bolster the credibility of a witness. The court further explained that certain passages from the report served as an improper vehicle to introduce hearsay evidence concerning Appellant's history, while other passages appeared to bolster Appellant's credibility. Thus, the court denied the Commonwealth's motion to preclude the entirety of Dr. Lischick's testimony and report, but the court directed Appellant to redact the expert report, or to submit a new report by April 23, 2021, in accordance with the court's order. (**See** Order, 3/26/21, at 1-9).

On May 4, 2021, Appellant provided the Commonwealth with a revised expert report. The Commonwealth subsequently filed a motion to exclude portions of the revised expert report, again arguing that the report exceeded the allowable scope of the court's prior order. On June 2, 2021, the trial court granted the Commonwealth's motion to the extent it sought to narrow the revised expert report in accordance with the March 26, 2021 order. The court granted Appellant leave to either redact the report or issue a new report in compliance with the order.

On July 13, 2021, the Commonwealth filed a motion *in limine*, which sought to preclude Dr. Lischick from testifying in violation of the court's

limiting order and sought to exclude the expert report and addendum, arguing that Appellant never complied with the court's order to redact the inadmissible material, and the report was now incapable of separation. The Commonwealth also sought to exclude prior bad acts on the part Victim.

On July 23, 2021, following a pretrial hearing, the court granted the Commonwealth's motion to exclude in part, ordering that Dr. Lischick was precluded from presenting any testimony in violation of the court's March 26, 2021 limiting order.[2] The court also granted the Commonwealth's motion to exclude Dr. Lischick's expert report, deciding that the report exceeded the scope of permissible expert testimony despite two occasions where the defense was afforded the opportunity to revise the report in accordance with the court's order. The court granted the Commonwealth's motion to exclude prior bad acts of Victim in limited part; specifically, the court precluded mention of Victim's prior bad acts in Dr. Lischick's report where the report had not been revised to comply with the court's prior orders. Otherwise, the court denied the Commonwealth's motion to exclude evidence of Victim's prior bad acts, finding that the character evidence of Victim's turbulent or dangerous character was admissible because Appellant was asserting self-defense. Similarly, the court granted in part and denied in part the Commonwealth's

_____

[2] Appellant did not request a transcription of the notes of testimony from this pretrial hearing. Therefore, we rely on the trial court and the parties' descriptions of what occurred at the hearing.

motion to preclude evidence of Victim's mental health history and diagnosis. The court granted the motion insofar as it precluded Dr. Lischick from presenting any testimony in violation of the court's limiting order; however, it denied the motion without prejudice concerning potential mental health treatment records which may be introduced at trial.

The case proceeded to a two-week jury trial. At trial, the Commonwealth introduced the testimony of Dr. Michael Johnson, a forensic pathologist who reviewed the autopsy in this matter. Dr. Johnson testified that the cause of death was a gunshot wound to the upper left side of Victim's chest. (*See* N.T. Trial, 8/5/21, at 23, 30). He explained that the bullet traveled through the Victim's body in a downward left to right manner. (*Id.* at 33). Dr. Johnson elaborated that the angle of the barrel of the firearm when Appellant fired it was pointing at the Victim from left to right, front to back and downward. (*Id.* at 37).

The Commonwealth also called Sergeant Charles Fino, a firearm and tool mark examiner for the Pennsylvania State Police Bureau of Forensic Services, who the court accepted as an expert in the forensic examination of firearms, including range of fire determination. (*See* N.T. Trial, 8/9/21, at 6-7). Sergeant Fino testified that he had examined the murder weapon, a Ruger semi-automatic pistol, and after performing testing, verified that the discharged bullet was fired from the murder weapon. (*Id.* at 7-9). Sergeant Fino testified that, based on his testing, 6.4 pounds of force was required to

fire the gun, and the firearm did not discharge during any shock or drop testing. (*Id.* at 13-15, 20). Sergeant Fino testified that based on several tests that he conducted he was able to determine a range of fire. Specifically, he found that the firearm was greater than two-feet away from Victim's chest when Appellant shot him. (*Id.* at 45).

Appellant testified at trial in her defense. After providing a lengthy history of the turbulent and violent relationship she had with Victim, she explained that on March 13, 2019, she shot Victim in self-defense. Appellant claimed that she was arguing with Victim about his drug use when he brought out the knife and attempted to stab her. (*See* N.T. Trial, 8/11/21, at 152-57). Appellant claimed that Victim knew that she is deathly afraid of knives. At the time she believed that she had been stabbed and, in fear for her life, went upstairs to retrieve the gun. (*Id.* at 158). Appellant then alleged that she returned downstairs, with the gun, and started talking to Victim because she was worried about him, and she was trying to convince him to go to the hospital for treatment. (*Id.* at 159). Appellant claimed that after she threatened to leave if he did not get treatment, Victim charged at her with the knife. (*Id.* at 160). Appellant stated that she grabbed the gun and Victim kept coming at her, and she reacted by pulling the trigger out of fear for her own safety. (*Id.*) Appellant testified that when she shot Victim, she believed he was going to kill her. (*Id.* at 161). After she pulled the trigger, when she realized that she had shot Victim, Appellant called 911 seeking help for Victim.

Ultimately, Appellant testified that she reacted out of fear, that she believed Victim might have killed her, and that she did what anybody would have done in that situation. (*Id.* at 164).

Subsequently, Appellant introduced Dr. Lischick as an expert witness for the defense. Dr. Lischick opined that Appellant suffered from Battered Woman Syndrome, Post Traumatic Stress Disorder ("PTSD"), and major depressive disorder. (*See* N.T. Trial 8/13/21, at 100). Defense counsel asked whether "[t]he fact that [Appellant] suffered from Battered Woman Syndrome, how would that have impacted her state of mind on March 13, of 2019?" (*Id.* at 102). The prosecutor objected and after a discussion at sidebar, the court sustained the objection and defense counsel withdrew the question. Specifically, the trial court explained that such testimony was beyond the scope of what the witness may testify. The court stated that the witness may testify about the symptoms she observed, her testing, and her conclusion, and then how people with battered woman's syndrome may have or may not have acted or felt. Nevertheless, the court specified that Dr. Lischick could not testify how battered woman's syndrome impacted Appellant's state of mind on the date in question. (*Id.* at 103).

During cross-examination, the prosecutor questioned Dr. Lischick about her notes from interviewing Appellant. He read a portion of the notes, drawn from Dr. Lischick's expert report, and permitted Dr. Lischick to refresh her recollection by viewing the report to confirm that was what she had written.

(*Id.* at 108-111). When the prosecutor again referenced the report, defense counsel objected and asked "for the report to be admissible" because the prosecutor was "relying on it to question the…witness, and [had] opened the door at this point." (*Id.* at 113). In ruling on the objection, the court did not permit Appellant to enter the entire report into evidence. Rather, it directed defense counsel to provide Dr. Lischick with a copy of the report to follow along while she was being questioned.

In closing, the prosecutor argued that Victim had to be significantly lower than Appellant in order to make a downward trajectory of the bullet when shot from over two feet away. (*See* N.T. Trial, 8/18/21, at 68). The prosecutor described the trajectory of the bullet as demonstrating that Victim was "flinching, trying to get away and [Appellant is] above him and she's pretty close." (*Id.* at 70). At the close of argument, defense counsel objected to the trajectory argument, claiming that the evidence did not support an inference of the position of Victim when he was shot. (*Id.* at 104). The court overruled the objection, explaining that it was a fair argument and that the jury would be instructed that counsel's arguments are not evidence. (*Id.* at 106).

On August 19, 2021, the jury found Appellant guilty of third-degree murder. The court conducted a sentencing hearing on January 31, 2022. At the hearing, the court noted that it reviewed the presentence investigative ("PSI") report. Appellant offered the testimony of Dr. Deborah Doyle Belknap,

a mitigation specialist. Dr. Belknap opined that several mitigating circumstances were present in this case and described many of Appellant's adverse childhood experiences. Dr. Belknap noted that Appellant had taken part in available programming while in jail after she was arrested for this incident, and that she was working toward her GED. Dr. Belknap reiterated that Victim subjected Appellant to five years of abuse before she shot him. Finally, Dr. Belknap opined that Appellant was remorseful and that she would benefit from treatment. (*See* N.T. Sentencing, 1/31/22, at 13-17). The court heard from Appellant's children and other members of her family and Appellant read a statement to the court. The court also heard from several of Victim's family members. The trial court explained how it weighed the sentencing factors and that a mitigated range sentence was not appropriate in this case. Ultimately, the court sentenced Appellant to 18-40 years of incarceration, which fell within the standard range of the sentencing guidelines.

On February 9, 2022, Appellant filed an application seeking an extension of time to file a post-sentence motion, which the trial court granted. Appellant retained a ballistics expert, Mr. James Gannalo, who reviewed the evidence admitted at trial and opined that one could not extrapolate the positioning of the parties at the time of the shooting. On March 3, 2022, Appellant filed a post-sentence motion seeking a new trial based on prosecutorial misconduct and requesting reconsideration of the sentence. Attached to the motion was

a draft report from Mr. Gannalo. Appellant filed an amended post-sentence motion on April 21, 2022. The court conducted a hearing on the post-sentence motion on April 22, 2022, after which it directed the parties to file supplemental briefs.[3] The court did not permit Appellant to call Mr. Gannalo as a witness at the hearing. The trial court denied Appellant's post-sentence motion by order entered on August 30, 2022. Appellant filed a timely notice of appeal on September 29, 2022.[4]

_____

[3] Appellant initially sought a new trial based on after discovered evidence and requested that the court reconsider its sentence. (**See** Post-Sentence Motion, filed 3/3/22, at 2). However, in her amended motion, Appellant argued that she was entitled to a new trial based on prosecutorial misconduct which prejudiced her ability to receive a fair trial. (**See** Amended Post-Sentence Motion, filed 4/21/22, at 2-3). The court acknowledged the different argument that Appellant presented in her amended post-sentence motion and noted that it was submitted without leave of court and beyond the deadline for post-sentence motions. After speaking with the parties, and with the agreement of counsel, the court decided to allow additional time for the Commonwealth to respond to the new argument raised and permitted the filing of supplemental briefs after the hearing on the post-trial motions.

[4] The 120-day period for a decision on Appellant's post-sentence motion expired on July 1, 2022. However, the clerk of courts did not enter an order deeming the post-sentence motion denied on that date by operation of law. Instead, the trial court entered an order denying the post-sentence motion on August 30, 2022, outside the 120-day period, and Appellant appealed within 30 days of that order. This Court has held that a breakdown in the operations of the court occurs when the trial court clerk fails to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c). **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). Thus, we see no impediment to our review under these circumstances.

We also note that Appellant stated that the appeal was taken from the January 31, 2022 sentence, and the August 30, 2022 order denying her post-sentence
*(Footnote Continued Next Page)*

Appellant raises the following issues on appeal:

1) Did the court err by limiting the testimony of the defendant's expert witness, Dr. Cynthia Lischick, an expert on battered [woman's] syndrome, both pre-trial and again during the trial?

2) Did the court err by prohibiting the defense from entering Dr. Cynthia Lischick's expert report into evidence during trial, particularly after the Commonwealth opened the door to having it admitted by reading directly from the report during trial?

3) Did the court commit error by allowing the prosecutor to commit prosecutorial misconduct by stating in his closing argument that the victim was shot execution style while on his knees when there was no expert evidence at trial that supported this conclusion and the defense objected to his closing?

4) Did the court err by denying [Appellant's] motion for a new trial based on new evidence when it failed to allow [Appellant's] ballistic expert to testify as to inaccurateness of [the] prosecutor's statements in his closing regarding execution style murder?

5) Did the court err by sentencing [Appellant] to 18 years in prison on the minimum end when [Appellant] has a prior record score of 0 and defense provided a mitigation expert at sentencing listing at least seven mitigating factors and only one aggravating factor was listed by the Commonwealth?

(Appellant's Brief at 6-7) (unnecessary capitalization omitted).

_____

motions. It is well-established that "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." *Commonwealth v. Shamberger*, 788 A.2d 408, 410 (Pa.Super. 2001) (*en banc*), *appeal denied*, 569 Pa. 681, 800 A.2d 932 (2002) (citing *Commonwealth v. Chamberlain*, 658 A.2d 395, 397 (Pa.Super. 1995)). The caption in this case correctly reflects only an appeal taken from the January 31, 2022 judgment of sentence.

- 11 -

In her first issue, Appellant claims that the trial court erred when it limited Dr. Lischick's expert testimony and sustained the Commonwealth's objection to counsel's question: "[t]he fact that she suffered from Battered Woman Syndrome, how would that have impacted her state of mind on March 13, 2019?" (N.T. Trial, 8/13/21, at 102). Appellant insists that a defendant's state of mind is central to a self-defense case, and expert testimony was admissible to explain how years of abuse would have affected her state of mind on the date of the shooting. (Appellant's Brief at 18). Appellant argues that in order to assess her self-defense claim, the jury was required to hear and understand the history of abuse perpetrated by Victim. Appellant contends the court should have allowed Dr. Lischick to testify how the specific events in this case would have affected Appellant's state of mind. In addition, Appellant insists that Dr. Lischick should have been permitted to explain how Appellant was deathly afraid of knives based on her childhood experiences, and an ordinary kitchen knife would make Appellant fear for her life. (*Id.* at 21). Appellant concludes the trial court abused its discretion in limiting Dr. Lischick's testimony, and this Court must grant relief. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow.

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

- 12 -

result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004) (internal citation and quotation marks omitted).

> Likewise, admissibility of expert testimony is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. It has long been established that expert opinion testimony is proper only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. However, expert testimony may not be used to bolster the credibility of witnesses because witness credibility is solely within the province of the jury.

*Commonwealth v. Pitts*, 740 A.2d 726, 733 (Pa.Super. 1999) (citations and internal quotation marks omitted).

In Pennsylvania, expert testimony regarding battered woman's syndrome "is admissible as probative evidence of the defendant's state of mind as it relates to a theory of self-defense." *Commonwealth v. Miller*, 634 A.2d 614, 621-22 (Pa.Super. 1993) (*en banc*), *appeal denied*, 538 Pa. 622, 646 A.2d 1177 (1994). Battered woman's syndrome is not a defense itself, rather it fits within the law of self-defense, and history of the victim

abusing the defendant is relevant to explain the defendant's state of mind when she used the force. *Id.* at 622. Notably, expert testimony "is not introduced to improperly bolster the credibility of the defendant, but rather, to aid the jury in evaluating the defendant's behavior and state of mind given the abusive environment which existed." *Id.*

In *Pitts, supra*, this Court considered the admissibility of expert testimony concerning symptoms associated with PTSD.[5] This Court concluded that evidence that the appellee was suffering from PTSD, and the symptoms exhibited by appellee that led the expert to make that conclusion were relevant and probative of appellee's state of mind on the issue of self-defense. The Court also concluded that expert testimony was admissible concerning how phobias associated with PTSD "could cause a heightened level of alertness, guardedness, and expectation of harm." *Pitts, supra* at 733 (footnote omitted). Notably, the *Pitts* Court explained that "psychiatric testimony has long been held admissible to prove a defendant's subjective belief that he or she is in danger of imminent death or serious bodily injury." *Id.* at 734 (citations omitted).

Here, the trial court explained the limitations that applied to testimony concerning battered woman's syndrome as follows:

---

[5] The *Pitts* Court explained that "battered woman syndrome is recognized under the broader classification of post-traumatic stress disorder." *Pitts, supra* at 734 n.4.

an expert may introduce a report describing the symptoms associated with battered woman syndrome in refuting commonly held myths and beliefs regarding domestic violence. In addition, said expert may opine that defendant was suffering from the syndrome, and may enumerate the symptoms exhibited by defendant that led to this conclusion. Finally, an expert may explain how the symptoms of battered woman syndrome could cause a heightened level of alertness, guardedness, and expectation of harm. Defendant would then be free to argue this evidence is relevant and probative of defendant's state of mind on the issue of self-defense, which requires a subjective belief of danger or death.

(Trial Court Order, 3/26/21, at 5).

Consistent with this explanation, the court ruled that it would permit Appellant to introduce expert opinions that Appellant was suffering from battered woman's syndrome, and the symptoms exhibited by Appellant that led to that conclusion. Further, the court explained that the expert "may explain how the symptoms of [battered woman's] syndrome **could** cause a heightened level of alertness, guardedness and expectation of harm." (**Id.**) (emphasis in original). The court noted that Appellant "would then be free to argue this evidence is relevant and probative of [her] state of mind on the issue of self-defense, which requires a subjective belief of danger or death." (**Id.**)

At trial, in sustaining the Commonwealth's objection, the court reiterated that Appellant's expert was not permitted to testify as to how Appellant suffering from battered woman's syndrome impacted her state of mind at the time of the killing; rather, the court clarified that the expert was

limited to testifying how it **could have** impacted Appellant's state of mind. (**See** N.T. Trial, 8/13/21, at 103).

Upon review, we cannot say that the court abused its discretion in ruling on the Commonwealth's objection. Here, the court sought to prevent the expert from bolstering improperly Appellant's credibility, which was a determination for the jury. **See Miller, supra**. The record makes clear the court did not restrict Appellant from arguing how battered woman's syndrome affected her state of mind when she shot Victim, and the court permitted Dr. Lischick to testify extensively as to battered woman's syndrome and its effects to aid Appellant's defense. Although testimony concerning how battered woman's syndrome **could have** affected Appellant's state of mind would have been proper, the court properly prohibited Dr. Lischick from opining on how battered woman's syndrome would have/or did affect Appellant's state of mind when she shot Victim. **See Pitts, supra**. Therefore, Appellant's first issue is meritless.

In her second issue, Appellant argues that the court erred when it granted the Commonwealth's motion to exclude Dr. Lischick's expert report. Appellant claims that the "issues"[6] listed in the report were relevant to

---

[6] Appellant summarizes the issues discussed in the report as follows:

> [F]irst, was [Appellant] a victim of battering, and, if so, what did she experience over the course of her relationship? Second, if [Appellant] suffered psychological effects in

*(Footnote Continued Next Page)*

determine Appellant's state of mind at the time of the shooting and whether she reasonably believed that her life was in danger. Appellant contends that the conclusions in Dr. Lischick's report are not intended to bolster Appellant's credibility, but "to help the jury understand [Appellant's] state of mind." (Appellant's Brief at 29).[7] Appellant argues that the trial court erred when it "criticized Dr. Lischick's report for presenting a lengthy history" including an abusive childhood because this information is relevant to how Dr. Lischick diagnosed Appellant with PTSD and Battered Woman's Syndrome. (*Id.* at 30). Appellant maintains that the trial court "also indicates that the report includes 404(b) evidence because it lists prior bad acts committed by the victim in this case against [Appellant]," which the court should have admitted to support her claim of self-defense. (*Id.*) Appellant insists she was entitled to introduce Rule 404(b) prior bad acts as evidence of third-party guilt under *Commonwealth v. Yale*, 665 Pa. 635, 249 A.3d 1001 (2021).

Appellant further argues that the court erred in "criticizing Dr. Lischick's

---

response to the abuse, did any of these contribute to her state of mind on March 13, 2019? Finally, if [Appellant] did suffer psychological effects of battering in her relationship with [Victim], did any additional traumatic events in [Appellant's] life contribute to her actions on March 13, 2019?

(Appellant's Brief at 27).

[7] Appellant does not expand on this argument or cite the specific conclusions to which she refers.

report for containing hearsay." (Appellant's Brief at 31). Appellant asserts that "while Dr. Lischick's report contained hearsay from records that were not in evidence and interviews from individuals not all of whom testified at trial, these documents and interviews are routinely used by psychologists in reaching a diagnosis."[8] (*Id.* at 32). Appellant also submits that after the prosecutor cross-examined Dr. Lischick using the report, Appellant should have been able to introduce the report to assist the jury "in understanding complicated material." (*Id.* at 33). Appellant concludes that the court's failure to admit the report was erroneous, such error was not harmless, and this Court must grant her a new trial. We disagree.

"When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa.Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." ***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa.Super. 2020) (citation omitted). Rather, an abuse of discretion only occurs where the trial court has committed an error of law, or "when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." ***Id.***

In ***Commonwealth v. Hairston***, 665 Pa. 711, 249 A.3d 1046 (2021),

---

[8] Appellant does not cite to the specific passages in the report to which she refers.

our Supreme Court explained that "[b]ecause issues of credibility are within the exclusive province of the jury, expert testimony on the issue of a witness's credibility is prohibited." *Id.* at 751, 249 A.3d at 1069. This Court discussed the admissibility of an expert report relating to battered woman's syndrome in *Miller, supra*. There, this Court explained that such evidence

> is admissible as probative evidence of the defendant's state of mind as it relates to a theory of self-defense. The syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant.

*Miller, supra* at 622. This Court further explained that "expert testimony regarding a 'battered person syndrome' was relevant to the appellant's state of mind and is not introduced to improperly bolster the credibility of the defendant, but rather, to aid the jury in evaluating the defendant's behavior and state of mind given the abusive environment which existed." *Id.*

In *Pitts, supra*, this Court discussed an expert report that described symptoms of PTSD, "not[ing] that battered woman syndrome is recognized under the broader classification of post-traumatic stress disorder." *Pitts, supra* at 743 n.4. There, the expert report in question "elaborated on the symptoms associated with post-traumatic stress syndrome," explained the expert's opinion that the appellee "was suffering from post-traumatic stress syndrome, and enumerated the symptoms exhibited by [a]ppellee that had led [the expert] to that conclusion." *Id.* at 733. The expert also "explained how

phobias associated with post-traumatic stress syndrome could cause a heightened level of alertness, guardedness and expectation of harm." *Id.* Upon review, this Court held that "this evidence is relevant and probative of [a]ppellee's state of mind on the issue of self-defense, which requires a subjective belief of danger or death." *Id.* at 733-34. The Court explained that evidence of post-traumatic stress syndrome "is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense. Psychiatric testimony has long been held admissible to prove a defendant's subjective belief that he or she is in danger of imminent death or serious bodily injury." *Id.* at 734 (citations omitted).

The *Pitts* Court further set forth specific guidelines for expert opinion testimony that would be inadmissible under this standard, explaining:

> We note that [the expert] further opined in his report that [a]ppellee was particularly predisposed and preconditioned to interpret experiences as posing a risk to him and, given the circumstances as alleged by [a]ppellee, the post-traumatic stress syndrome affected [a]ppellee's subjective belief that he was in danger of imminent death or serious bodily injury. It appears that **this opinion would be inadmissible at trial as it invades the province of the jury and impermissibly bolsters [the a]ppellee's credibility**.

*Id.* at 733 n.3 (citation omitted; emphasis added).

In its March 26, 2021 order, the trial court ruled:

> Reading *Miller* and *Pitts* together, an expert may introduce a report describing the symptoms associated with battered-woman syndrome and refuting commonly held myths and beliefs regarding domestic violence. In addition, said expert may opine that [Appellant] was suffering from the

- 20 -

syndrome, and may enumerate symptoms exhibited by [Appellant] that led to this conclusion. Finally, an expert may explain how the symptoms of battered-woman syndrome could cause a heightened level of alertness, guardedness and expectation of harm. [Appellant] would then be free to argue this evidence is relevant and probative of [Appellant's] state of mind on the issue of self-defense, which requires a subjective belief of danger or death.

(Trial Court Order, 3/26/21, at 5) (footnote omitted).

As noted, although twice given the opportunity to amend her expert report to comport with the trial court's order, Appellant made only minor changes. As the trial court later explained in its Rule 1925(a) opinion:

the expert report was well outside the scope of admissible testimony. It contained language that constituted, *inter alia*, hearsay, impermissible bolstering of Appellant's credibility, impermissible denigration of the victim's character and background, speculative statements about the Appellant's exact frame of mind at the time of the shooting, and opinions on matters outside Dr. Lischick's expertise. Thus, it could not be introduced in whole at trial. However, Dr. Lischick was permitted to testify on the admissible portions at trial.

(Trial Court Opinion, filed 11/28/22, at 4) (unnecessary capitalization and citation omitted).

Here, although portions of the report were admissible, Appellant failed to amend the report such that it would be admissible in its entirety, in compliance with the court's order. Further, Appellant's brief does not cite the specific portions of the expert report that she contends the court improperly excluded. Rather, she asserts that the entire report was admissible based on the report's relevance to her claim of self-defense. On this record, we cannot

say that the trial court's exclusion of Dr. Lischick's expert report constituted an abuse of the court's discretion. The court twice gave Appellant the opportunity to amend the expert report to fit within the scope of admissible evidence as set forth in this Court's decision in **Miller, supra** and **Pitts, supra**. (**See** Trial Court Orders, 3/26/21, 6/2/21). Appellant declined to amend the report as directed. Therefore, we conclude that the trial court did not err in excluding introduction of the entire report at trial.[9] **See Cook, supra**; **Belani, supra**.

We turn now to the second portion of Appellant's claim, whether the trial court erred when it denied Appellant's request to introduce the expert report at trial after the Commonwealth used the expert report in its cross-examination of Dr. Lischick.

---

[9] Additionally, as noted by the trial court, Appellant was permitted to introduce relevant and admissible portions of the report through the expert testimony of Dr. Lischick. Contrary to Appellant's claim, the court permitted her to introduce bad acts evidence pertaining to Victim, explaining that "in a trial for homicide, where self-defense is asserted, the defendant may introduce evidence of the turbulent or dangerous character of the decedent." (Trial Court Order, 7/23/21, at 2-3) (citation omitted). The trial court explained that Appellant was permitted to introduce relevant evidence of Victim's bad character, just not through the expert report.

Further, Appellant's reliance on **Yale, supra** is misplaced. In **Yale**, our Supreme Court held that a criminal defendant was entitled to introduce evidence of a third party's guilt for a crime, noting that such evidence would tend to negate the defendant's guilt. **Yale, supra** at 673, 249 A.3d at 1023–24 (stating: "the third person's crimes or bad acts must bear a highly detailed similarity to the crime with which the defendant is charged"). Here, Appellant sought to offer prior bad acts of Victim, not evidence that would implicate him as the shooter. Thus, we conclude that **Yale** is inapplicable here.

Pennsylvania Rule of Evidence 612, concerning writing used to refresh a witness's memory, provides the following:

**Rule 612.  Writing or Other Item Used to Refresh a Witness's Memory**

**(a) Right to Refresh Memory.**  A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying.

**(b) Rights of Adverse Party.**

(1) If a witness uses a writing or other item to refresh memory while testifying, an adverse party is entitled to have it produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony.

Pa.R.E. 612(a), (b)(1).

Instantly, while cross-examining Dr. Lischick, the prosecutor asked Dr. Lischick about a diagnosis of PTSD that Dr. Lischick had made that predated Appellant's relationship with Victim.  The diagnosis was in the expert report, and defense counsel objected "asking for the report to be admissible[, because the prosecutor is] relying on it to question [Dr. Lischick] and…he's opened the door at this point."  (N.T. Trial, 8/13/21, at 113).  The prosecutor argued that the Commonwealth was entitled to use a report offered by a witness on cross-examination, and that the diagnosis in the report was relevant because it was responding to testimony that Appellant had no anger issues and was able to calm down quickly.  (*Id.* at 113-15).

The trial court denied the request to admit the report, reiterating the court's concern that the report in its entirety would "invade…the thoughts of

the jury on the ultimate issue of the subjective belief." (***Id.*** at 115). The court then permitted defense counsel to provide Dr. Lischick with a copy of her report so that she could follow along. (***Id.*** at 117). In its Rule 1925(a) opinion, the court further explained its decision as follows:

> The Commonwealth's cross-examination remained within the scope provided by [the trial] court. The Commonwealth questioned Dr. Lischick on her opinions, as informed by the admissible statements within the expert report–to wit, that Appellant likely suffered from PTSD and major depression prior to meeting the victim.
>
> …Pennsylvania Rule of Evidence 612(a) permits the use of writings or other documents to refresh a witness's recollection. Pennsylvania Rule of Evidence 703 provides that an expert may base their opinion on facts or data not otherwise admissible if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. Here, Dr. Lischick authored the expert report. Dr. Lischick claimed that she could not answer the Commonwealth's questions on cross-examination without reviewing the expert report. The Commonwealth then utilized particular, admissible portions of the expert report to refresh Dr. Lischick's recollection of the facts underlying her expert opinion. Thus, the court did not err by permitting the Commonwealth to read from the expert report in this manner.
>
> Finally, whereas Pa.R.E. 612(b) provides that, when a witness uses a writing to refresh their recollection, the adverse party is entitled to introduce into evidence any portion that relates to the witness's testimony, Appellant was not an adverse party under the Rule. Here, Dr. Lischick was Appellant's witness. The Commonwealth was impeaching Dr. Lischick's opinion with statements in the report, not acting as its proponent. Therefore, Appellant was not entitled to introduce the remainder of the report into evidence and we properly excluded the expert report from admission at trial.

(Trial Court Opinion, filed 11/28/22, at 4-5) (unnecessary capitalization

omitted).

Upon review, we conclude that the trial court did not abuse its discretion by prohibiting Appellant from admitting Dr. Lischick's entire expert report after the Commonwealth referred to part of the report in its cross-examination of Dr. Lischick. The Commonwealth's use of an admissible portion of the expert report, to refresh Dr. Lischick's recollection, was entirely permissible. *See* Pa.R.E. 612(a). Moreover, as the trial court noted, Appellant was not an adverse party entitled to introduction of the report. *See* Pa.R.E. 612(b). Therefore, Appellant's second issue merits no relief.

In her third issue, Appellant argues that the Commonwealth made impermissible statements during its closing argument. Appellant claims that the prosecutor referred to matters which were not in evidence, specifically, that the internal trajectory of the bullet must have resulted from Appellant standing above Victim, who was flinching away from her and near the ground when he was shot. Appellant insists that the Commonwealth's statements were not a fair extrapolation of the expert's testimony, were not matters of common public knowledge, and were not matters of which the court took judicial notice. Appellant acknowledges that prosecutors are generally allowed to argue vigorously in closing arguments, but she contends that the prosecutor's statements here were not supported by the evidence presented at trial. Appellant concludes the prosecutor committed misconduct in closing arguments, and this Court must grant her a new trial. We disagree.

Our standard of review of the denial of a motion for a new trial based on prosecutorial misconduct is "whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007).

> In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.
>
> Not every unwise remark on a prosecutor's part constitutes reversible error. Indeed, the test is a relatively stringent one. Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward [an appellant] so that they could not weigh the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made. Finally, when a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury.

*Id.* Further:

> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Commonwealth v. Eilliott*, 622 Pa. 236, 282, 80 A.3d 415, 443 (2013), *cert. denied*, 574 U.S. 828, 135 S.Ct. 50, 190 L.Ed.2d 54 (2014) (internal citation omitted). The "prosecutor has reasonable latitude during his closing argument

to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury." ***Commonwealth v. Hanible***, 612 Pa. 183, 248, 30 A.3d 426, 465 (2011), *cert. denied*, 568 U.S. 1091, 133 S.Ct. 835, 184 L.Ed.2d 662 (2013) (internal citation and quotation marks omitted).

Instantly, during the prosecutor's closing argument, the prosecutor responded to arguments of defense counsel concerning the physical proximity and positioning of Appellant and Victim at the time of the shooting. The prosecutor stated that the bullet passed through Victim's body with a downward trajectory and argued that this downward trajectory meant Victim had to be significantly lower than Appellant when she shot him. (***See*** N.T. Trial, 8/18/21, at 68). Based on the evidence admitted at trial, the prosecutor inferred that the bullet trajectory demonstrated that Victim was "flinching, trying to get away and [Appellant is] above him and she's pretty close." (***Id.*** at 70).

The trial court evaluated this claim as follows:

> [Appellant] asks the [c]ourt to believe that the Commonwealth can make no inference whatsoever regarding the angle of the gun or the position of the parties from the evidence of the internal trajectory of the bullet produced at trial. [Appellant's] request is untenable. It is common sense that a bullet exits a firearm at an angle based on the position of the firearm. If the barrel is parallel to the ground, the bullet exits parallel to the ground. As such, it is appropriate and reasonable that the Commonwealth argued—based on the evidence it presented regarding the trajectory of the bullet—that [Appellant's] claim of self-defense did not comport with the physical

> evidence. The jury was free to believe or disbelieve the various versions of events proposed by the parties and free to believe or disbelieve any witness or other evidence in the case. As the Commonwealth has the burden of disproving [Appellant's] self-defense assertions, said evidence and argument go directly to contradict [Appellant's] assertions in her testimony.

(Trial Court Opinion, 8/30/22, at 6-7).

The record supports the court's analysis. At trial, the coroner testified that the bullet moved through Victim's body from left to right in a **downward** path through the body. The evidence further established that Appellant was approximately seven inches shorter than Victim. Furthermore, as the firearms expert testified, the gun was at least two feet from Victim when the bullet was fired. On this record, we conclude the prosecutor's challenged statements were a fair presentation of the Commonwealth's view of the evidence. We cannot say that the challenged portion of the prosecutor's remarks, when read in context of the entire closing argument, prejudiced the jurors or formed in their minds a fixed bias and hostility toward Appellant such that the jurors could not weigh the evidence and render a true verdict. *See Elliott, supra*; *Harris, supra*.

Moreover, any prejudicial effect from the prosecutor's statement was cured by the trial court's general instructions to the jury following closing arguments that "[t]he arguments counsel gave…are not part of the evidence," that the jury was "not required to accept the arguments of either lawyer," and that it is for the jury "alone to decide the case based on the evidence as it was

presented during the course of the trial from the witness stand and in accordance with the [c]ourt's instructions." (N.T. Trial, 8/18/21, at 114-15). **See also Commonwealth v. Hawkins**, 549 Pa. 352, 388, 701 A.2d 492, 510 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998) (stating any prejudicial effect from prosecutor's statement was cured by trial court's general cautionary instruction to jury that closing arguments were not evidence and that Commonwealth always bore burden of proof because defendant did not have to prove he is not guilty; law presumes juries follow court's instructions as to applicable law). Therefore, Appellant's third issue does not merit relief.

In her fourth issue, Appellant argues the court erred when it did not permit her to call Mr. James Gannalo to testify at the hearing on her post-sentence motion. Specifically, Appellant argues that the court erred in precluding her from admitting the report of Mr. Gannalo, in which he opined that the prosecutor's statement during closing argument concerning the trajectory of the bullet was an inaccurate analysis of the evidence presented at trial. Appellant concludes that the report was relevant to the issue of whether the statement was a fair extrapolation of the evidence, and the court erred in refusing to admit it. (Appellant's Brief at 41-43). We disagree.[10]

---

[10] We note that Appellant cites no relevant legal authority in support of her claim that Mr. Gannalo's report was relevant and should have been admitted.

Instantly, at the hearing on the post-sentence motion, Appellant attempted to introduce the testimony of Mr. Gannalo that the statements made by the Commonwealth in its closing argument were improper. Appellant explained that in forming this opinion, Mr. Gannalo reviewed "the statements made by the Commonwealth in closing, trial testimony from Dr. Johnson, Dr. Bollinger's forensic autopsy report, Thomas Yanac's testimony, the Pennsylvania State Police Ballistics report by Sgt. Fino," and several photo exhibits. (Brief in Support of Appellant's Post-Sentence Motion, 4/21/22, at 5). Mr. Gannalo then opined that the prosecutor's statement was not an appropriate inference because "the trajectory of a bullet causing a wound in [the victim's] body can only be used to determine the angle of the firearm and its relation to the body of a person shot with it. Without actual video evidence, the movements of two people involved in a shooting can change dramatically before and even during the shooting." (*Id.* at 6).

The court explained that the real issue, whether the statement was a fair inference from the evidence of record, was a judicial determination, and an expert opinion on that judicial determination would be inappropriate. (*See* N.T. Hearing, 4/22/22, at 10). We agree with the trial court that whether a closing statement constitutes prosecutorial misconduct is a judicial determination subject to an abuse of discretion standard of review. *See Elliott, supra*; *Harris, supra*. Appellant has cited no case law indicating that expert testimony is required, or even permitted to aid a court in its

determination. *See* Pa.R.A.P. 2119(a) (discussing required argument section of appellate brief). Thus, Appellant's fourth issue merits no relief.

In her final issue, Appellant argues that the trial court failed to consider relevant mitigating factors when it imposed its sentence. Specifically, Appellant claims that the court should have considered the testimony of her mitigation specialist, Dr. Belknap, who testified concerning Appellant's extraordinarily traumatic childhood. (Appellant's Brief at 44-46). Appellant emphasizes that Dr. Belknap suggested that despite the adverse childhood experiences suffered by Appellant, she had a minimal criminal record and had lived a law-abiding life and played an active role in her children's lives. Appellant also highlights that she was subject to violence and abuse from Victim and, despite this, continued to care for him and ensure he received mental health treatment. Appellant insists that given the mitigating circumstances in this case, the trial court's sentence of 18 to 40 years' imprisonment was manifestly excessive. Appellant concludes the court abused its sentencing discretion, and this Court must vacate and remand for resentencing. We disagree.

Initially, an appellant's challenge to the discretionary aspects of her sentence does not entitle her to an appeal as of right. ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa.Super. 2008), *appeal denied*, 600 Pa. 745, 964 A.2d 895 (2009), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspect of

sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa.Super. 2010) (quoting **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in her brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (emphasis and internal quotation marks omitted).

Instantly, Appellant filed a timely notice of appeal, preserved her

sentencing issue in a timely-filed post-sentence motion (following the grant of an extension), and included the requisite Rule 2119(f) statement. *See Moury, supra*. Therefore, we turn to whether she presented a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 912-13 (Pa.Super. 2000).

Appellant claims that the court failed to consider mitigating factors in imposing its sentence, and that the court focused on the seriousness of the crime without considering other relevant criteria. (*See* Appellant's Brief at 9-10). This Court has "held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa.Super. 2013) (quoting *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa.Super. 2010)). *See also Moury, supra* at 171 (stating: "An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question"). Although a bald allegation that

the court failed to consider mitigating factors does not pose a substantial question, a claim that the trial court focused only on the seriousness of Appellant's offense and ignored other relevant sentencing factors, does raise a substantial question. *See Commonwealth v. Trimble*, 615 A.2d 48 (Pa.Super. 1992) (holding defendant's claim that court failed to consider factors set forth under Section 9721(b) and focused solely on seriousness of defendant's offense raised substantial question). Therefore, we turn to the merits of Appellant's challenge.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *appeal denied*, 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, [her] age, personal characteristics and [her] potential for rehabilitation." *Id.*

Further:

> ...Where the sentencing court had the benefit of a [PSI report], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. … Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. **See Commonwealth v. Cruz-Centeno**, [668 A.2d 536 (Pa. Super. 1995)], *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

**Moury, supra** at 171 (some internal citations omitted).

Here, the court sentenced Appellant to 18 to 40 years of incarceration. In fashioning its sentence, the court had the benefit of a PSI report and imposed a sentence that was within the standard range. In addition, the court received and reviewed the sentencing mitigation report from Dr. Belknap. As the trial court explained, it "considered the mitigating factors described in the report, especially [Appellant's] traumatic history as a victim of abuse," as well as the letters from Appellant's sister, niece, cousin, and friends urging the court to consider a mitigated sentence. (Trial Court Opinion, 8/30/22, at 12). In addition, the court "considered the deep pain and trauma inflicted upon the victim's friends and family as a result of [Appellant's] actions." **Id.** The court stated its reasons for imposing its sentence, including the mitigating factors, on the record at sentencing. (**See** N.T. Sentencing, 1/31/22, at 85-91). On this record, we discern no abuse of discretion in the court's imposition of a standard guideline range sentence. **See Moury, supra**; **McNabb, supra**.

Therefore, Appellant is not entitled to relief on her challenge to the discretionary aspects of sentencing.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/23/2024